# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1138

CELERINA PELEA, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided        August 5, 2005   )

*Kathy A. Lieberman*, of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *Joan E. Moriarty,* Acting Assistant General Counsel; *Patricia Trujillo*, Deputy Assistant General Counsel; and *Ari Nazarov*, all of Washington, D.C., were on the brief for the appellee.

Before STEINBERG, *Chief Judge*,[1] and KASOLD and HAGEL, *Judges.*

STEINBERG, *Chief Judge*:   In a single-judge order dated March 25, 2003, the Court ordered vacated a May 2, 2001, decision of the Board of Veterans' Appeals (Board or BVA) that concluded that Celerina Pelea (the appellant) did not meet the eligibility requirements for Department of Veterans Affairs (VA) benefits because service in the U.S. Armed Forces by her deceased husband, Bibiano Pelea, could not be verified (Record (R.) at 1-6); the Court initially ordered the matter remanded for readjudication in light of the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3, 114 Stat. 2096, 2096-98, and the Court's holdings in *Quartuccio v. Principi*, 16 Vet.App. 183 (2002), and *Charles v. Principi*, 16 Vet.App. 370, 374 (2002).  *Pelea v. Principi*, 18 Vet.App. 295 (table), 2003 WL 1559912 (Mar. 25, 2003).  The Court entered judgment in May 2003, and the Secretary subsequently sought review in the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).

---

[1]  Jonathan R. Steinberg became Chief Judge of the Court at noon on August 5, 2005.

On April 23, 2004, the Federal Circuit vacated this Court's single-judge order and remanded the matter for further proceedings consistent with its opinion in *Conway v. Principi*, 353 F.3d 1369 (Fed. Cir. 2004). In *Conway*, the Federal Circuit concluded that the Court is required to "'take due account of the rule of prejudicial error' in all cases addressing the notice requirements in [38 U.S.C. §] 5103(a)." *Conway,* 353 F.3d at 1375. In December 2004, in light of the Federal Circuit's remand, this Court ordered the parties to file supplemental pleadings addressing in what respects VA had failed to comply with its VCAA notice obligation and how the appellant was specifically prejudiced by that failure; both parties submitted responsive pleadings on that issue. On May 17, 2005, the appellant filed with the Court an unopposed motion that the Court order additional supplemental briefing addressing the prejudicial nature of VA's purported failure to fulfill its VCAA notice obligation in light of this Court's recently issued opinion in *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005), *appeal docketed*, No. 05-7157 (Fed. Cir. June 14, 2005). The Court granted in part the appellant's motion on May 27, 2005, and, in so doing, the Court also directed the parties to address in their pleadings the relationship between 38 C.F.R. §§ 3.8 (2000) (Philippine and Insular forces) and 3.9 (2000) (Philippine service) (now 38 C.F.R. §§ 3.40 and 3.41 (2004)) and 38 C.F.R. § 3.203 (2004) (Service records as evidence of service and character of discharge). Both parties filed responses but neither has provided significant analysis of the relationship between § 3.203 and §§ 3.40 and 3.41. For the reasons set forth below, the Court will vacate the May 2001 Board decision and remand the matter for readjudication.

## I.  Relevant Background

Bibiano P. Pelea died on November 21, 1979. R. at 18. In November 1999, his widow, the appellant, submitted to the Manilla, Philippines, VA Regional Office (RO) in an informal application for VA benefits asserting that her late husband had served as a guerilla with the Philippine Commonwealth Army during World War II (WWII), at least part of which was in the service of the United States Armed Forces. R. at 9, 13. With her application, she submitted to VA a copy of a notarized Form PVAO-4 from the Philippine Veterans Affairs Office (PVAO) certifying that the decedent was a veteran of WWII, and a statement from the decedent's

2

physician. R. at 9, 10. In response to her application, the VARO sent to the appellant a December 1999 letter stating in pertinent part:

> If you believe you qualify or wish a formal determination of your entitlement to this benefit, please complete and return the enclosed VA Form 21-534 and submit with it the items checked below:
>
> / / Copy of veteran's discharge certificate or any acceptable evidence of his military service.
>
> / / Certified true copy of the veteran's death certificate bearing the seal and signature of the local civil registrar
>
> / / Certified true copy of your marriage certificate bearing the seal and the signature of the local civil registrar or custodian of public records.

R. at 15. It appears that none of the above items were checked or marked. In January 2000, the RO received from the appellant three documents: (1) A completed formal application for dependency and indemnity compensation (DIC) benefits; (2) her deceased husband's official "Certificate of Death"; and (3) their certificate of marriage. R. at 18, 21, 22. In February 2000, the RO sent to the appellant another letter, which stated in part:

> Before we can take further action on your claim, we **must** secure a certification from the United States Army Reserve Personnel Center (ARPERCEN) that the military service claimed is recognized by the United States Department of the Army.
>
> It takes as long as six months for the U.S. Army to verify military service and you should not inquire about the status of your claim with VA until six months have passed.

R. at 24 (emphasis added). The RO requested evidence of the decedent's military service from ARPERCEN in January 2000. R. at 27. In March 2000, ARPERCEN notified the RO that the decedent had "no service as a member of the Philippine Commonwealth Army, including recognized guerillas, in the service of the United States Armed Forces." R. at 3, 27. The RO then sent to the appellant a letter, dated May 12, 2000, informing her that her DIC-benefits claim had been denied on the ground that her spouse "did not have the required military service to be eligible for VA benefits." R. at 30. That May 2000 letter stated further:

The law requires that basic eligibility to VA benefits may be established **only** upon verification of valid military service by [ARPERCEN]. ARPERCEN advised us that they conducted a thorough search of their records but failed to find any evidence that your spouse served as a member of the Commonwealth Army of the Philippines, including the recognized guerillas, in the service of the Armed Forces of the United States.

Decisions concerning verification of military service are the responsibility of ARPERCEN and under the provisions of law (38 Code of Federal Regulations Section 3.203) are binding on VA which has no authority to change or amend the findings.

*Ibid.* (emphasis added). The appellant filed a Notice of Disagreement as to the RO decision (R. at 33), and the RO in August 2000 issued a Statement of the Case (SOC) continuing the denial of her claim. R. at 35. That SOC, inter alia, provided a list of the "Pertinent Laws and Regulations" that applied to her claim and a statement of "Reasons and Bases" as to why the RO denied her claim. R. at 38, 39. The summary of law and regulation included citations, as pertinent, to 38 C.F.R. §§ 3.8(d)(1) and (2) and 3.203. As to § 3.203, the SOC stated:

For the purpose of establishing entitlement to pension, compensation, [DIC] or burial benefits, VA may accept evidence of service submitted by a claimant (or sent directly to VA by the service department), such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge, without verification from the appropriate service department if the evidence meets the following conditions . . . .

R. at 38 (quoting § 3.203(a)). In the section explaining the "reasons and bases" for the RO's denial of legal entitlement to benefits, the SOC stated:

Entitlement to benefits from VA is dependent upon a finding by the United States Department of the Army, that an individual had valid military service in the Armed Forces of the United States.

The law requires that basic eligibility for VA benefits may be established **only** upon verification of valid military service by the U.S. Army Reserve Personnel Command (AR-PERSCOM). AR-PERSCOM advised us that they conducted a thorough search of their records but failed to find any evidence that your spouse served as a member of the Commonwealth Army of the

4

Philippines, including the recognized guerillas, in the service of the Armed Forces of the United States.

Decisions concerning verification of military service are the responsibility of AR-PERSCOM and under the provisions of law ([38 C.F.R. § 3.203]) are binding on VA which has no authority to change or amend the findings.

R. at 39 (emphasis added). The appellant continued her appeal to the Board, and in the May 2001 BVA decision here on appeal, the Board agreed with the RO's decision and concluded that the appellant lacked basic eligibility for VA benefits because "[t]he service department has certified that [her] deceased husband had no service as a member of the Philippine Commonwealth Army, including the recognized guerillas, in the service of the U.S. Armed Forces during World War II." R. at 2.

## II. Contentions on Appeal

The appellant presents in her brief and supplemental briefs several arguments in support of her claim. First, she contends that, pursuant to 38 C.F.R. § 3.203(a), the PVAO document she had submitted with her claim should be considered sufficient evidence of her husband's qualifying military service because the term "service department" in regulation § 3.203 is ambiguous and nowhere defined in the regulations. Appellant's (App.) Brief (Br.) at 3-6. Second, she contends that VA breached its duty to notify her pursuant to the VCAA because it failed to inform her about the evidence necessary to substantiate her claim. App. Supplemental (Suppl.) Br. at 11. Specifically, she contends (1) that VA never notified her about "what would constitute 'acceptable evidence' of [qualifying] military service" (Suppl. Br. at 12); (2) that VA failed to advise her specifically that the PVAO document that she had submitted was inadequate for purposes of showing qualifying military service (id. at 13); (3) that VA never notified her that she could submit U.S.-service-department records evidencing her husband's qualifying service (App. Second Suppl. Br. at 4-5); and (4) that VA failed to advise her "that she should provide any additional personal data pertaining to her husband, such as any aliases he may have used during military service" (Suppl. Br. at 12-14). Finally, she asserts that "[t]he natural effect of lack of

5

adequate notice prior to the denial of the claim" was to produce prejudice against her claim. Second Suppl. Br. at 6.

As to the appellant's first argument, the Secretary contends that the appellant's interpretation of § 3.203 is inconsistent with this Court's holding in *Duro v. Derwinski*, 2 Vet.App. 530 (1992), and the holding of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Soria v. Brown,* 118 F.3d 747 (Fed. Cir. 1997). Secretary's (Sec'y) Br. at 7-9. As to the VCAA, the Secretary asserts that the duty to notify is not applicable in this case because "the law and not the evidence is outcome determinative" (Sec'y Suppl. Br. at 4). He contends that "because VA is bound by the current ARPERCEN determination that the [a]ppellant did not have qualifying service for purposes of VA benefits, the Board correctly determined that[,] as a matter of law, [the a]ppellant was not eligible for VA benefits." Sec'y Br. at 7. The Secretary explains his contention regarding § 3.203 as follows:

> [T]he question of whether [the a]ppellant submitted evidence that complied with the requirements of [§] 3.203(a)(1)-(3) is not relevant in this case. At most, compliance with those requirements gives the RO the option of not requesting verification – an option that the RO did not exercise in this case. . . . Once the RO chose to request verification of service, it was bound by the negative answer that the appellant did not have qualifying service. The service department has made a finding and the agency is bound by that finding.

*Id*. at 10. In the alternative, the Secretary contends that if the Court "determines that section 5103(a) is applicable, the Court should find that the notice afforded was sufficient." Suppl. Br. at 3. He contends further that if the Court were to find that notice was inadequate the Court should find that the appellant has failed to show that such inadequate notice was prejudicial to her case. *Ibid*.

### III. Applicable Law and Regulation

#### *A. Veteran Status*

"In order to qualify for VA benefits, a claimant . . . or the party upon whose service the claimant predicates the claim . . . [must be] a 'veteran.'" *Cropper v. Brown*, 6 Vet.App. 450, 452 (1994); *see D'Amico v. West*, 209 F.3d 1322, 1327 (Fed. Cir. 2000) (rejecting this Court's

6

reasoning in *Laruan v. West*, 11 Vet.App. 80, 86 (1998) (en banc), that "'Congress could not have intended that persons without requisite veteran status would benefit from the statutory presumptions and enactments reserved for veterans'", which reasoning Court had also employed to hold in *Laruan* that claimant must show "veteran" status by preponderance of evidence). A "veteran" is "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2); *see* 38 C.F.R. § 3.1(d) (2004). In certain circumstances, "service" may include service in the Commonwealth Army of the Philippines, including certain organized guerilla forces who were called into service of the U.S. Armed Forces. *See* 38 U.S.C. § 101(2); 38 C.F.R. § 3.40.

The Secretary is authorized by statute to prescribe "regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under [laws administered by VA]. 38 U.S.C. § 501(a)(1). Pursuant to that authority, the Secretary has prescribed regulatory provisions governing the evidentiary requirements for establishing "service" in the U.S. Armed Forces for VA benefits purposes; § 3.203 provides in pertinent part:

### § 3.203 Service records as evidence of service and character of discharge.

(a) *Evidence submitted by a claimant*. For the purpose of establishing entitlement to pension, compensation, [DIC] or burial benefits [VA] may accept evidence of service submitted by a claimant . . . , such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge, without verification from the appropriate service department if the evidence meets the following conditions:

(1) **The evidence is a document issued by the service department**. A copy of an original document is acceptable if the copy was issued by the service department or if the copy was issued by a public custodian of records who certifies that it is a true and exact copy of the document in the custodian's custody or, if the copy was submitted by an accredited agent, attorney or service organization representative who has successfully completed VA-prescribed training on military records, and who certifies that it is a true and exact copy of either an original document or of a copy

7

issued by the service department or a public custodian of records; and

      (2) The document contains needed information as to length, time and character of service; and

      (3) In the opinion of [VA] the document is genuine and the information contained in it is accurate.

      . . . .

      (c) *Verification from the service department.* ***When*** the claimant does not submit evidence of service or the evidence submitted does not meet the requirements of paragraph (a) of this section (and paragraph (b) of this section in pension claims), [VA] shall request verification of service from the service department. . . .

38 C.F.R. § 3.203(a), (c) (2004) (boldface-italic emphasis added). As to Philippine claimants in particular, § 3.41 provides in pertinent part:

**§ 3.41 Philippine service.**

      (a) For a Regular Philippine Scout or a member of one of the regular components of the Philippine Commonwealth Army while serving with Armed Forces of United States, the period of active service will be from the date certified by the Armed Forces as the date of enlistment or date of report for active duty whichever is later to date of release from active duty, discharge, death, or in the case of a member of the Philippine Commonwealth Army June 30, 1946, whichever was earlier. . . .

      . . . .

      (b) Active service of a Regular Philippine Scout or a member of the Philippine Commonwealth Army serving with the Armed Forces of the United States will include a *prisoner-of-war* status immediately following a period of active duty, or a period of recognized guerrilla service or unrecognized guerrilla service under a recognized commissioned officer. In those cases where following release from active duty as set forth in paragraph (a) of this section, the veteran is factually found by [VA] to have been injured or killed by the Japanese because of anti-Japanese activities or his or her former service in the Armed Forces of the United States, such

8

injury or death may be held to have been incurred in active service for [VA] purposes. Determination shall be based on all available evidence, including service department reports, and consideration shall be given to the character and length of the veteran's former active service in the Armed Forces of the United States.

(c) A prisoner-of-war status based upon arrest during general zonification will not be sufficient of itself to bring a case within the definition of return to military control.

(d) The active service of members of the irregular forces *guerrilla* will be the period certified by the service department.

38 C.F.R. § 3.41 (formerly 38 C.F.R. § 3.9). In *Soria v. Brown*, the Federal Circuit described the regulations governing the proof of service by a Philippine claimant as follows:

[T]he Secretary has promulgated, inter alia, 38 C.F.R. §§ 3.9 and 3.203(a), (c) to govern the conditions under which . . . VA may extend veterans' benefits based on service in the Philippine Commonwealth Army. Those regulations require that an applicant prove his service in the Philippine Commonwealth Army with *either* official documentation issued by a United States service department *or* verification of the claimed service by such a department. *See* 38 C.F.R. § 3.9(a) (authorizing veterans' status for Philippine veterans "from the date certified by the Armed Forces [of the United States]"), § 3.203(a) (requiring service department documentation of service where available), § 3.203(c) (requiring service department verification of service *where documentation is not available*).

*Soria*, 118 F.3d at 748 (boldface-italic emphasis added).

### B. VCAA Notice Requirements

Section 3 of the VCAA amended, inter alia, 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence"). VCAA § 3(a), 114 Stat. at 2096-97. Section 5103(a) provides:

(a) REQUIRED INFORMATION AND EVIDENCE.–Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim.

As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a). On August 29, 2001, the Secretary issued regulations that implemented, inter alia, amended section 5103 in 38 C.F.R. § 3.159(b). 66 Fed. Reg. 45,620, 45,630-31 (Aug. 29, 2001). Subject to several exceptions not implicated by the current appeal, the Secretary made those regulations applicable to, inter alia, any claim for benefits, such as those in the instant cases, pending before the Department and "not decided by VA" as of November 9, 2000, the date of the VCAA's enactment. 66 Fed. Reg. at 45,629; *see Pelegrini v. Principi*, 18 Vet.App. 112, 118-19 (2004), *appeal dismissed*, 122 Fed. Appx. 993, 2005 WL 290172 (Jan. 26, 2005) (order). Specifically, the amended regulation § 3.159(b)(1) provides, and provided at the time of the BVA decision here on appeal, in pertinent part:

> (b) *VA's duty to notify claimants of necessary information or evidence.* (1) When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim. VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the claimant. VA will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim.

38 C.F.R. § 3.159(b)(1) (2004).

Regarding the notice requirement, in *Quartuccio v. Principi* this Court remanded a matter for further adjudication after concluding that neither of the potential VCAA-notice communications regarding that matter met the requirements set forth in amended section 5103(a) and § 3.159(b)(1) because they failed to "'notify the claimant . . . of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim'" and failed to "'indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary . . . will attempt to obtain on behalf of the claimant.'" *Quartuccio*, 16 Vet.App. at 187 (quoting 38 U.S.C. § 5103(a)).

10

Generally, "an appellant claiming noncomplying notice bears the burden of convincing the Court that a notice error has been committed, by referring to specific deficiencies in the document(s) in the record on appeal (ROA), including any documents that the Secretary and/or the Board may have relied on as having met the section 5103(a)/§ 3.159(b)(1) requirements." *Mayfield*, 19 Vet.App. at 111. In all cases addressing the notice requirements in section 5103(a), this Court is required to "take due account of the rule of prejudicial error", 38 U.S.C. § 7261(b)(2). *See Conway*, 353 F.3d at 1375; *Mayfield*, 19 Vet.App. at 109-16. In *Mayfield*, this Court discussed extensively the requirements for the Secretary to fulfill his notice obligations, and the application of the rule of prejudicial error by this Court under 38 U.S.C. § 7261(b)(2) both generally and regarding any notice deficiencies, including the burdens on appellants and the Secretary in connection with the Court's taking due account of the prejudicial-error rule. *See Mayfield*, 19 Vet.App. at 120-24.

### *C. Reasons or Bases*

The Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Charles* 16 Vet.App. at 373; *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

### III.  Analysis

#### *A.  Reasons or Bases*

In this case, the Board failed to provide an explanation as to all material issues of law presented on the record when it did not address (or cite) 38 C.F.R. § 3.9 (currently § 3.41).  That regulation, which states that, for Philippine service, "the period of active service will be from the date certified by the Armed Forces", appears to conflict with § 3.203(a), which provides that a claimant may show service by submitting certain documents "without verification from the appropriate service department".  38 C.F.R. §§ 3.41(a), 3.203(a).  Although neither party has contended that only § 3.41 governs and that § 3.203 is inapplicable in the case of a claimant seeking benefits based on Philippine Commonwealth Army service, it would appear that § 3.41 could be read as relegating Philippine claimants to a single source – ARPERCEN verification – for showing U.S.-Armed-Forces service.  *Cf.* VA Gen. Coun. Prec. 14-94 (June 8, 1994) (explaining § 3.9 (now § 3.41) and stating that this Court's holding in *Duro*, *supra*, as to binding nature of service department findings under § 3.203 "related to the establishment of the fact of service, not to determination of the dates of such service").  If so, then the Court's decision in the instant matter would turn on whether notice was proper only as to § 3.41.  However, such an interpretation would appear to be contrary to the Federal Circuit's analysis of those regulations in *Soria*, where it concluded that "the Secretary has promulgated, inter alia, 38 C.F.R. §§ 3.[41] ***and 3.203(a), (c)***, to govern the conditions under which VA may extend veterans' benefits based on service in the Philippine Commonwealth Army."  *Soria*, 118 F.3d at 748 (emphasis added).  Moreover the Federal Circuit there explained those provisions as requiring "that an applicant prove his service in the Philippine Commonwealth Army with ***either*** official documentation issued by a United States service department ***or*** verification of the claimed service by such a department." *Ibid*. (citing §§ 3.9(a) (now § 3.41(a)) and 3.203(a) and (c) (emphasis added)).

In light of the apparent conflict between § 3.41 and § 3.203, the Court in its May 27, 2005, order directed the parties to address "the relationship between 38 C.F.R. §§ 3.8 (Philippine and Insular forces), 3.9 (Philippine service) (now 38 C.F.R. §§ 3.40 and 3.41 (2004)) and 38 C.F.R. § 3.203 (Service records as evidence of service and character of discharge)".  *Pelea v. Nicholson*, No. 01-1138, 2005 WL 1389892 (Vet. App. May 27, 2005).  However, neither party

12

has provided any significant guidance on this issue in their second supplemental briefing. After careful consideration of the foregoing, the Court concludes that the inadequacy of the Board's statement of reasons or bases and the failure of both parties to respond to the Court's directive on this issue prevents the Court from carrying out effective judicial review of the May 2, 2001, BVA decision, insofar as determining the meaning of the applicable regulations regarding qualifying U.S.-Armed-Forces service. Accordingly, we will remand to the Board for readjudication the question of the meaning of § 3.41 and (1) whether that regulation requires that qualifying service of Philippine claimants may be shown only through an ARPERCEN verification or (2) whether § 3.203 requires that, once that verification is sought and a negative response is received, § 3.203(a) has no further application, and, if so, whether that result obtains regardless of whether the appellant submits any documents before the ARPERCEN search[2]. *See* 38 U.S.C. § 7104(a), (d)(1); *Gilbert* and *Allday*, both *supra*.

### B. VCAA Compliance

As noted above, the Secretary is required by section 5103(a) to inform the claimant of information and evidence not of record, if any (1) that is necessary to substantiate the claim (2) that VA will seek to obtain, and (3) that the claimant is expected to provide. 38 U.S.C. § 5103(a); *Quartuccio*, 16 Vet.App. at 187. In this case, veteran status is a critical element of the claim, and section 5103/§ 3.159(b) notice must inform a claimant regarding any information and evidence not of record that is necessary to substantiate that status and regarding the obligations, if any, of the claimant and VA in providing that evidence[3]. Here, the Board concluded that the appellant had been provided with the statutorily required notice in two documents, (1) the December 1999 letter and (2) the August 2000 SOC. R. at 2. The appellant contends that neither of these documents informed her "that the information and evidence still needed to substantiate her claim included either evidence of her husband's military service that satisfied the

---

[2] On remand, this interpretive question involves consideration of the requirement that "interpretive doubt" be resolved in favor of the claimant. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994).

[3] The Court notes that, although veteran status is an element of every claim, failure to give section 5103(a) notice as to status where that fact is not in dispute will always be nonprejudicial to the claimant. *See* 38 U.S.C. § 7261(b)(2); *cf. Mayfield v. Nicholson*, 19 Vet.App. 103, 129 (2005) (holding that any Board reasons-or-bases deficiency in discussing how section 5103(a)/§ 3.159(b)(1) notice has been satisfied would of necessity be nonprejudicial to claimant where claimant received compliant notice).

13

requirements of § 3.203(a) or personal data relating to her husband that differed from the information submitted to ARPERCEN, such as any alias that Mr. Pelea may have used in service." App. Second Suppl. Br. at 4. For the following reasons, we hold that neither document cited by the Board nor any document in the ROA provided the appellant with the requisite section 5103(a) notice, and we hold below that this failure was prejudicial to the appellant.

As to the December 1999 letter, we note that, although it provided a brief list of the components needed to establish eligibility for VA benefits, it did not inform the appellant of the evidence needed to substantiate her claim. *See* R. at 15. First, although the letter noted that, in order to secure "a formal determination of entitlement to this benefit" she needed to submit (with her completed VA Form 21-534) "the items checked below", it appears that none of those "items" in the list "below" had been checked. *See* R. at 15. Furthermore, even if the first item on that list **had** been checked, the letter gave no indication to the appellant as to what VA considered "acceptable evidence" of qualifying military service. *Ibid*. Hence, even though the RO had received the appellant's PVAO document three weeks earlier, the RO neither informed her of the inadequacy of the PVAO document nor provided her with information as to what documents she could submit that would constitute "acceptable evidence" of qualifying military service (such as a U.S.-service-department document, assuming that the correct law is, as *Soria*, *supra*, states, that § 3.203 provided the appellant with an option, notwithstanding § 3.41, to submit U.S.-service-department documents). *Ibid*.

Moreover, as discussed below, VA sent to the appellant further correspondence that was incomplete or affirmatively misleading (assuming that § 3.203 applies here). In that regard, the February 2000 RO letter to her stated (with no further qualification or explanation):

> Before we can take further action on your claim, we **must** secure a certification from . . . ARPERCEN . . . that the military service claimed is recognized by the United States Department of the Army. . . .

R. at 24 (emphasis added). The above-quoted statement did not inform her that § 3.203(a) allows her to submit certain documents, "such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge **without verification from the appropriate service department**." 38 C.F.R. § 3.203(a) (emphasis added); *see Soria*, *supra*. The

14

above-quoted statement, as well as being incomplete, also may imply that the appellant's *only* avenue of showing qualifying service is "a certification from [ARPERCEN]". Hence, a reasonable person, upon receiving such notice, might well be discouraged from submitting to VA any § 3.203(a)-qualifying documents in their possession. *Cf. Mayfield*, 19 Vet.App. at 125 (holding that reasonable person would have known, based on RO's relatively contemporaneous communications, about what evidence was "missing" in order to substantiate claim). Furthermore, the RO compounded this problem by twice presenting the appellant with affirmatively misleading statements (again assuming that § 3.203 applies here). *See ibid.* (referring to how confusing notice "could amount to a notice deficiency"). First, upon informing her that her DIC claim had been denied, the RO stated in the May 2000 letter that "[t]he law requires that basic eligibility for VA benefits may be established *only* upon verification of valid military service by [ARPERCEN]." R. at 30 (emphasis added). Second, the RO repeated this misstatement of the law (again assuming that § 3.203 applies here) in the August 2000 SOC cited by the Board. Although the SOC accurately quoted § 3.203 in the section entitled "Pertinent Laws and Regulations" (R. at 38), the "Reasons and Bases" section on the very next page contained the same inaccurate (again assuming that § 3.203 applies) statement of law (noting that "basic eligibility to VA benefits may be established *only* upon verification of valid military service by [AR-PERSCOM]"). R. at 38-39 (emphasis added). In addition, the SOC postdated the May 2000 initial unfavorable agency of original jurisdiction (AOJ) decision in the instant case. *See Pelegrini*, 18 Vet.App. at 120 (holding that section 5103(a) notice must precede initial AOJ adjudication on service-connection claim).

Having found a notice error, the Court must now "take due account of the rule of prejudicial error". 38 U.S.C. § 7261(b)(2) (as amended by Veterans Benefits Act of 2002 (VBA), § 401, Pub. L. No. 107-330, 116 Stat. 2820, 2832); *see Conway*, 353 F.3d at 1374-75. With respect to the Federal Circuit's remand based on *Conway, supra*, the Court notes that, in its May 2003 order the Court did not "flatly refuse[] to 'take due account of the rule of prejudicial error.'" *Conway*, 353 F.3d at 1373 (quoting 38 U.S.C. § 7261(b)(2) (as amended by the VBA)). Nonetheless, this case has been remanded to us.

In *Mayfield,* we discussed the rule of prejudicial error in relation to burdens of proof and production under the VCAA. Specifically, the Court held:

> [A]n appellant claiming noncomplying notice bears the burden of convincing the Court that a notice error has been committed, by referring to specific deficiencies in the document(s) in the [ROA], including any documents that the Secretary and/or the Board may have relied on as having met the section 5103(a)/§ 3.159(b)(1) requirements – that is, the appellant bears the burden of demonstrating specifically in what respects the particular notice documents are noncompliant in terms of the purposes sought to be achieved by the notice requirements.

*Mayfield*, 19 Vet.App. at 111. In the instant case, the appellant contends, and the Court agrees, that VA breached its section 5103(a) duty to notify her as to the information and evidence needed to substantiate her claim when, inter alia and as discussed above, it (1) failed to advise her that the PVAO document that she had submitted was inadequate for purposes of showing qualifying service, and (2) failed to notify her about "what would constitute 'acceptable evidence' of [qualifying] military service". App. Suppl. Br. at 12-14. The Secretary's failure in this regard constituted a failure as to the "first notice element", *Mayfield*, 19 Vet.App. at 122, which, as the appellant correctly asserts, constitutes a VA failure "to provide a key element of what it takes to substantiate her claim, thereby precluding her from participating effectively in the processing of her claim, which would substantially defeat the very purpose of section 5103(a) notice". *Mayfield, supra; see Pelegrini,* 18 Vet.App. at 122 (explaining that "the very purpose of requiring that a claimant whose claim is missing necessary evidence be notified of the information and evidence needed to substantiate the claim is so that the claimant and/or VA can produce that missing evidence"). Our conclusion that the Secretary failed to provide notice as to the first notice element subsumes a conclusion that the Secretary failed to notify the appellant about who would be responsible for seeking to obtain the information and evidence required by the first notice element. Therefore, although the error here could be a specific second-notice-element violation as well because § 3.203(a) refers to "evidence submitted by a claimant", the clear first-notice-element violation controls. Therefore, no further analysis of the effect of a second-notice-element violation is required.

Accordingly, because that notice error is such that it would have "the natural effect of producing prejudice", the burden shifts to the Secretary to demonstrate "that there was clearly no prejudice" to the appellant from the notice error in terms of the fairness of the adjudication. *Mayfield,* 19 Vet.App. at 121. As to how the Secretary may meet this burden, we held in *Mayfield*:

> [T]he Secretary must demonstrate a lack of prejudice by persuading the Court that the purpose of the notice was not frustrated – e.g., by demonstrating (1) that any defect in notice was cured by actual knowledge on the part of the appellant that certain evidence (i.e., the missing information or evidence needed to substantiate the claim) was required and that she should have provided it, or (2) that a reasonable person could be expected to understand from the notice provided what was needed, or (3) that a benefit could not possibly have been awarded as a matter of law.

*Mayfield*, 19 Vet.App. at 121 (citations omitted).

The Secretary asserts that the appellant was not prejudiced by lack of notice because a "reasonable person could have expected to understand from the notice provided that [the a]ppellant needed to submit evidence showing that the decedent had valid military service." Sec'y Second Suppl. Resp. at 4-5. Assuming that § 3.203(a) is applicable here, the Court cannot agree that the misleading information provided to the appellant prior to (or after) the initial AOJ adjudication would have prompted "a reasonable person" to submit additional evidence. In fact, it is just as likely – if not more so – that such misleading notice might compel a "reasonable person" in possession of § 3.203(a)-complying documents ***not*** to submit those documents.

The Secretary next asserts that the failure to notify was nonprejudicial in this case because the appellant is ineligible for VA benefits as a matter of law. Specifically, he contends that "[o]nce the RO chose to request verification of service, it was bound by the negative answer that [the a]ppellant did not have qualifying service." Sec'y Br. at 10. The Secretary asserts that § 3.203(a) and (c) are fully applicable to Philippines claimants but that once VA requests verification under paragraph (c), the claimant loses the right under § 3.203(a)(1) to submit "a document issued by the service department". The Secretary cites no authority for this interpretation, and neither the plain language of the regulation nor the applicable caselaw in *Soria*

or *Duro*, both *supra*[4], provides clear support for the Secretary's position as to the exclusive consequences of seeking verification from ARPERCEN. Where the agency itself has articulated no position on a regulation, the Court owes no deference to "agency counsel's interpretation" of that regulation adopted for the purpose of litigation. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1998). Indeed, as set forth in part III.A, above, *Soria* appears to establish an option for a claimant to show qualifying service "with *either* official documentation issued by a United States service department *or* verification of the claimed service by such a department." *Soria*, 118 F.3d at 748 (emphasis added).

Moreover, even if the Court were to determine that the Secretary's proffered interpretation of that regulation is correct, VA would surely have a duty to notify the appellant not only as to what would constitute a § 3.203(a)-qualifying document, but also as to the consequences, under that regulatory interpretation, of failing to submit such a document prior to the RO's decision to seek verification from ARPERCEN. Indeed, in a scheme where VA's initial inquiry to ARPERCEN carries such potentially outcome-determinative consequences, the duty to notify the claimant as to what evidence she may submit would be of even greater importance. Similarly, in the context of such an interpretation, or more so, if § 3.203(a) is not applicable here, VA's failure to inform the appellant that she should "provide any additional personal data pertaining to her husband, such as any aliases he may have used during military service", would also be a notice error[5]. *Cf. Sarmiento v. Brown*, 7 Vet.App. 80, 85 (1994) (holding that when claimant supplies

---

[4] We note that in *Soria v. Brown*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) characterizes § 3.203(c) as a provision to be used "*where documentation is not available*". *Soria*, 118 F.3d 747, 749 (Fed. Cir. 1997). In a case where a claimant possesses, and wishes to submit, § 3.203(a)-complying documents, it would not appear that those documents are "not available" simply because a service department has issued a negative certification. The Federal Circuit did not state that "availability" of a document would be rendered moot if a service department had issued a negative certification. Indeed, that court's only statement in this regard focuses on paragraph (c): "Where service department certification is required, *see 38 C.F.R. § 3.203(c)*, the VA has long treated the service department's decision on such matters as conclusive and binding on . . . VA." *Soria*, 118 F.3d at 749 (emphasis added). The sole focus in *Soria* was on the conclusive nature of service-department documents (which include both the documents listed in 38 C.F.R. § 3.203(a) as well as a verification by the department under § 3.203(c)).

[5] In this regard, a memorandum to the files from the Manilla VA Regional Office stated:

> ARPERCEN has repeatedly informed VA that unless the claimant reports personal
> data (such as name) which is different from that which was provided in a prior

18

new identifying information VA must submit additional request to ARPERCEN for verification of service), *overruled on other grounds by D'Amico v. West, supra*. Hence, notwithstanding the possible impact of § 3.41 discussed above, the Court concludes that under either interpretation of § 3.203 the Secretary did not comply with his notice obligations in this case[6], and that the Secretary has not demonstrated that such notice error was clearly not prejudicial. Accordingly, remand on this notice ground is indicated as well.

### C. Merits

As to the appellant's assertion that the PVAO document that she had submitted with her claim should be considered sufficient evidence of her husband's qualifying military service because the term "service department" in regulation § 3.203 is ambiguous and nowhere defined in the regulations, App. Br. at 3-6, the Court cannot agree. This argument ignores well-settled caselaw interpreting § 3.203 as requiring "official documentation issued by a United States service department or verification of the claimed service by" the U.S. service department. *Soria*, 118 F.3d at 748.

---

request for service verification, there is no value in resubmitting a request for reverification. A potential claimant's service is verified by the records associated with his name. If the name is a common one or if there are minor discrepancies in spelling or the middle initial, ARPERCEN will compare the service number, date of birth, place of birth and names of next of kin provided them on VA Form 3101 with records they have on file.

Record (R.) at 45. However, as the appellant asserts, there is no indication that VA ever conveyed that information to the appellant.

[6] With regard to the Secretary's interpretation of § 3.203, discussed in part III.A at and in note 1, *supra*, the Secretary should consider the appropriateness of disparate outcomes that may result from VA's failure to fulfill the section 5103(a) notice requirements. For example: Claimant X and claimant Y both possess U.S.-service-department documents deemed to be qualifying evidence pursuant to § 3.203(a), but X submits his document as proof of qualifying service (perhaps because he has been given notice under the VCAA) and Y does not (perhaps because he has not been given such notice). X's claim is granted. Y, because he did not submit his qualifying document, must get service-department verification, and he gets a no-verification response. Y submits his service-department qualifying document as proof, but it is not accepted under this § 3.203 interpretation because VA has already sought service-department verification and received a no-verification response. In connection with the remand ordered on the basis of the analysis in part III.A, above, VA should determine whether there is good justification for a different outcome simply because of *when* the claimant submitted his or her qualifying evidence, especially in a situation where no notice was given to the claimant as to his or her right to submit U.S.-service-department evidence.

## IV. Conclusion

On the basis of the foregoing analysis, the ROA, and the parties' pleadings, and having "take[n] due account of the rule of prejudicial error" pursuant to 38 U.S.C. § 7261(b)(2), the Court vacates the May 2001 BVA decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 101(2) 1310, 7104(a), (d)(1); 38 U.S.C. §§ 5100-5103(a), 5103A, 5106, 5107; 38 C.F.R. §§ 3.1(d), 3.40, 3.41, 3.159, 3.203; *Pelegrini*, *Charles*, and *Quartuccio*, all *supra*; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion and in accordance with 38 U.S.C. § 7112 (as added by the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673) (requiring Secretary to "take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court"); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that VBIA § 302 applies to all elements of a claim remanded by Court or Board), and in accordance with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.