# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-181

BENJAMIN F. KENT, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     March 31, 2006   )

*Sean A. Ravin*, of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; and *Barbara J. Finsness*, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, LANCE, and SCHOELEN, *Judge*s.

SCHOELEN, *Judge*:   The appellant, Benjamin F. Kent, through counsel, appeals an October 8, 2003, Board of Veterans' Appeals (Board or BVA) decision that determined that he had not presented new and material evidence to reopen his previously and finally denied claims for service connection for psychogenic gastrointestinal reaction and psoriasis.  Record (R.) at 1-13.  The appellant and the Secretary each filed a brief.  This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266.  For the reasons that follow, the Court will vacate the October 8, 2003, Board decision and remand the matters for further proceedings consistent with this opinion.

## I.  BACKGROUND

The appellant served on active duty in the U.S. Marine Corps from September 16, 1950, to January 20, 1951, when he received a medical discharge as a result of a disability.  R. at 17.  The report from his entrance medical examination reflects no mental or physical abnormalities.  *Id*.  On

October 30, 1950, he visited sick bay with complaints of stomach pain and vomiting of blood. R. at 21. At that time, he reported that three years before he entered service he had had an "ulcer" with pain, nausea, and vomiting of blood. R at 21. He stated that he was treated by his midwife-grandmother. R. at 22. He reported that he had done well on a diet of soft food, and had experienced no further symptoms until four days prior to his visit to sick bay. R. at 21. He was diagnosed with acute gastroenteritis, and he was transferred to a naval hospital for treatment. *Id*. After a series of medical tests were performed, the appellant was diagnosed with "hematemesis, cause unknown." R. at 23-24. In December 1950, after a second hospitalization for the same symptoms, the medical diagnosis was changed to "psychogenic gastrointestinal reaction." R. at 25, 33. The appellant was also diagnosed as having "symmetrical acne" on his face and back. R. at 28. In January 1951, the Board of Medical Survey determined that the appellant was not medically fit for duty because of his psychogenic gastrointestinal reaction, and that the disability preexisted service and was not aggravated by service. R. at 33.

In February 1951, the appellant filed a claim for disability compensation for an "ulcerated stomach." R. at 36-39. On April 24, 1951, a VA regional office (RO) denied the claim (as a claim for psychogenic gastrointestinal reaction). R. at 44. The RO gave the following reasons for its denial:

> Five weeks after induction into service, claimant was examined and found to have psychogenic gastro-intestinal reaction. In view of the short term of service, the nature and extent of the condition when discovered, the failure of the records to reflect permanent increase in severity due to injury, disease, pathological changes, emotional stress, strain, or other adverse influences peculiar to service [sic] is rebutted by clear and unmistakable evidence of record, including established and accepted medical principles.

R. at 44. The appellant did not appeal that decision. In 1958, he attempted unsuccessfully to reopen his claim. R. at 52-60.

In May 1996, he filed a claim for disability compensation for malaria, psoriasis, ulcers, and anxiety. R. at 62. Postservice medical treatment records, obtained in connection with the claim, revealed that the appellant had been treated for skin conditions that were diagnosed, inter alia, as seborrheic lesions, psoriasis, actinic keratosis, and acne rosacea. R. at 67, 326, 397-99, 404-05, 412, 415-18, 424-28, 430. In a July 1996 decision, the RO denied entitlement to service connection for

2

psoriasis on the basis that the appellant's service medical records were negative for any treatment, findings, or diagnosis of psoriasis. R. at 68-69. The appellant's claim for service connection for ulcers was denied because the RO determined that the service medical records (SMRs) were negative for "any definite diagnosis of a chronic gastrointestinal disability during service or within the one[-]year presumptive period." R. at 68. The RO also determined that the appellant had not submitted new and material evidence to reopen his claim for service connection for psychogenic gastrointestinal reaction. R. at 67. In December 1997, the appellant filed a Notice of Disagreement that was untimely because it was not filed within the one-year appeal period. R. at 74.

The appellant attempted to reopen the service-connection claims for psoriasis and psychogenic gastrointestinal reaction in July 1999. R. at 95. In support of his claims, he submitted copies of his service medical records. R. at 97. On August 4, 1999, the RO determined that no new and material evidence had been submitted. *Id*.

On March 16, 2000, the appellant submitted evidence from private physicians indicating that he was being treated for gastroesophageal reflux disease and psoriasis. R. at 104-08. In April 2000, the RO determined that the appellant had not submitted new and material evidence to reopen his claims for service connection for psoriasis and psychogenic gastrointestinal reaction. R. at 110-12. The appellant appealed that decision to the Board. R. at 126. In April 2001, the RO sent the appellant a letter to advise him of the Veterans Claims Assistance Act. R. at 143. The April 2001 letter advised the appellant that in order to "establish entitlement for service[-]connected compensation benefits," the evidence must show an injury or disease that began in or was made worse during military service, a current physical or mental disability, and a relationship between the appellant's current medical disability and an injury, disease, or event in service. *Id*. The April 2001 letter did not advise the appellant that he needed new and material evidence to reopen his claims. On October 8, 2003, in the decision here on appeal, the Board concluded that the appellant had not submitted new and material evidence to reopen his claims for service connection for psoriasis and gastrointestinal psychogenic reaction. R. at 1-13.

In his brief, the appellant asserts that the Board did not provide an adequate statement of reasons or bases for its decision because it failed to consider and discuss whether recent changes in the interpretation of law pertaining to the presumption of soundness entitled him to a de novo readjudication of his claim for service connection for psychogenic gastrointestinal reaction. Appellant's Brief (Br.) at 6-10. Alternatively, he argues that changes in the interpretation of the law

3

surrounding the presumption of soundness constituted new and material evidence to reopen his claim for psychogenic gastrointestinal reaction. *Id*. at 10-11. He also argues that VA violated 38 U.S.C. § 5103(a) when it failed to give him adequate notice of the information or evidence necessary to substantiate his claims. *Id*. at 11-14. The appellant asks the Court to vacate the Board decision and remand the matter. *Id*. at 14.

In his brief, the Secretary argues that there was a plausible basis for the Board's finding that there was no new and material evidence to reopen the appellant's service-connection claims, that the Board provided an adequate statement of reasons or bases for its decision, and that VA complied with its duty to notify pursuant to 38 U.S.C. § 5103(a). Secretary's Brief (Br.) at 8-15. He asks that the Court affirm the Board's decision. *Id*. at 21-22.

## II. ANALYSIS

### A. Readjudication of a Final Claim Pursuant to 38 U.S.C. § 5110(g)

Once a claim has been finally decided and disallowed, it may not be reopened in the absence of new and material evidence. 38 U.S.C. §§ 5108; 7104(b)(1). The appellant, citing to *Spencer v. Brown*, 4 Vet.App. 283 (1993), *aff'd,* 17 F.3d 368 (Fed. Cir. 1994), argues that because of "changes in the interpretation of law" surrounding the presumption of sound condition came about after the RO in April 1951 denied his claim for service connection for psychogenic gastrointestinal reaction in 1951, "the Secretary is required to conduct a de novo review of the previously denied claim" irrespective of whether the appellant has submitted new and material evidence to reopen his claim. Appellant's Br. at 7.

In *Spencer*, the Court recognized that when there has been an intervening liberalization of law that creates a new basis of entitlement to a benefit, an otherwise previously and finally denied claim may be readjudicated de novo on the same factual basis as the previously denied claim. *Spencer*, 4 Vet.App. at 288. The authority for such readjudication is 38 U.S.C. § 5110(g) and its implementing regulation, 38 C.F.R § 3.114 (2005). Section 5110(g) provides that "where compensation . . . is awarded or increased pursuant to any Act or administrative issue, the effective date of such award shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue." This statutory provision presupposes the right to a de novo adjudication of a previously and finally denied claim because of an intervening change in law that creates a new basis of entitlement to a benefit. *Spencer*, 4 Vet.App. at 288.

4

Harmonizing the provisions of section 5110(g) and the prohibition in section 7104(b) against reopening a finally denied claim in the absence of new and material evidence, the Court in *Spencer* found that when a "provision of law or regulation creates a new basis of entitlement to benefits, an applicant's claim of entitlement under such law or regulation is a claim separate and distinct from a claim previously and finally denied prior to the liberalizing law or regulation." *Spencer*, 4 Vet.App. at 289. In such a case, there is no attempt to reopen the finally denied claim; rather, a different claim is presented for adjudication. *Id.*

The appellant points to two "changes in the interpretation of law" that, he argues, triggered de novo adjudication of his claim for service connection for psychogenic gastrointestinal reaction. First, he argues that the Court's holding in *Crowe v. Brown*, 7 Vet.App. 238, 245 (1994), constitutes a change in intervening law. The appellant's argument fails because *Crowe* does not represent a change in law. Indeed, there has been no intervening change in law since his claim was denied in 1951. In *Crowe*, the Court held that the presumption of sound condition attaches to a disability unless the condition is detected at the time of a veteran's entrance examination. The Court's holding in *Crowe* is essentially a literal application of the plain meaning of the clear and unambiguous statutory language, which has been in effect, without substantive change, for more than 60 years. More specifically, since 1943, the express statutory language of section 1111 has provided that a veteran is presumed to be in sound condition except as to preexisting conditions that are noted upon entry into service. *See* 38 U.S.C. § 1111 ("[E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment . . . . "); *see also* Pub. L. No. 78-144 § 9(b), 57 Stat. 554-560 (1943) (codified as 38 U.S.C. app. ch. 12); *Wagner v. Principi,* 370 F.3d 1089, 1094-96 (Fed. Cir. 2004) (discussing legislative history of 38 U.S.C. § 1111); *Jordan v. Principi*, 17 Vet.App. 261, 276-77 (2003) (Steinberg, J., separate views) (discussing same), *aff'd sub. nom Jordan v. Nicholson*, 401 F.3d 1296 (Fed. Cir. 2005); *Cotant v. Principi*, 17 Vet.App. 116, 123-26 (2003) (discussing same). In short, the law as it currently exists was in effect at the time that the RO denied the appellant's service-connection claim in 1951.

Furthermore, there is no indication that when the RO denied the appellant's claim in 1951 it did so on the basis that he was not entitled to the presumption of soundness. Indeed, it appears that the RO concluded that the presumption of soundness was rebutted by clear and unmistakable

evidence that the appellant's psychogenic gastrointestinal reaction preexisted service and was not aggravated by service.

The second alleged intervening change in law is the 2004 holding of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in *Wagner, supra*. In *Wagner*, the Federal Circuit held that to overcome the presumption of soundness for wartime veterans under 38 U.S.C. § 1111, VA must show clear and unmistakable evidence of both a preexisting condition *and* a lack of in-service aggravation. *Wagner, supra; see also* VA Gen. Coun. Prec. 3-2003 (July 16, 2003). Prior to the Court's holding in *Wagner*, VA was required to show only clear and unmistakable evidence of a preexisting condition to overcome the presumption of soundness. *See Crowe*, 7 Vet.App. at 245; 38 C.F.R. § 3.304(b)(2004); *cf.* Presumption of Sound Condition: Aggravation of a Disability by Active Service, 70 Fed. Reg. 23,027, 23,029 (May 4, 2005) (amending § 3.304(b) to conform to *Wagner* holding). Thus, the effect of the Federal Circuit's decision in *Wagner* was to increase VA's burden to rebut the presumption of soundness for wartime veterans.

It is clear that the Federal Circuit's holding in *Wagner* represents a change in interpretation of law. However, the Court does not agree that this constitutes a liberalizing change in law warranting a de novo adjudication of the appellant's claim for service connection for a psychogenic gastrointestinal disorder. A change in law that is merely procedural does not create new rights to VA benefits. *See Spencer*, 4 Vet.App. at 289. In *Routen v. West*, 142 F.3d 1434, 1439-41 (Fed. Cir. 1988), the Federal Circuit held that a change in the law that raised the evidentiary burden required of VA to rebut the statutory presumption of aggravation available to peacetime veterans from "competent" evidence to "clear and unmistakable" evidence was procedural, and not substantive in nature. *Id*. The Federal Circuit stated that the change in the evidentiary standard did not create a new cause of action since no new basis of entitlement to the underlying VA benefit was created. *Id*. at 1442.

Here, as in *Routen*, the change in law brought about by the Federal Circuit's opinion in *Wagner* is procedural, and not substantive, in nature. Hence, the Court concludes that the Federal Circuit's decision in *Wagner* did not provide a new basis for establishing entitlement to benefits that would warrant adjudicating de novo the appellant's claim for service connection for psychogenic gastrointestinal disorder. In light of this holding, any failure by the Board to discuss the change in law surrounding the presumption of soundness is nonprejudicial because the Court can still carry out

6

a proper review. *See* 38 U.S.C. § 7261(b)*; Mayfield v. Nicholson*, 19 Vet.App. 103, 129 (2005) (holding that the Court's review was "not hindered by any reasons-or-bases deficiency in the Board decision, and a remand would be of no benefit to [the appellant] and would therefore be pointless"), *appeal docketed*, No. 05-7157 (Fed. Cir. June 14, 2005)*; Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that "strict adherence" to reasons-or-bases requirement where evidence was "overwhelmingly" against the claim would unnecessarily impose additional burdens on the BVA with no benefit flowing to the veteran); *see also Valiao v. Principi*, 17 Vet.App. 229, 232 (2003) (holding that "[w]here the facts averred by a claimant cannot conceivably result in any disposition of the appeal other than affirmance of the Board decision, the case should not be remanded for development that could not possibly change the outcome of the decision").

### B. Misapplication of Law as New and Material Evidence to Reopen a Claim

The appellant does not take issue with the Board's determination that the evidence submitted since the claim was last disallowed was not new and material evidence. Instead, he argues, in the alternative, that the changes in interpretation of law surrounding the presumption of soundness constitute new and material evidence to reopen his claim for service connection for psychogenic gastrointestinal reaction. Appellant's Br. at 7. The appellant's argument is without merit. The Federal Circuit held unequivocally in *Routen* that "misapplication of, or failure to apply, a statutory or regulatory burden-shifting presumption . . . does not constitute 'new and material evidence' for the purpose of reopening a claim under 38 U.S.C. § 5108." *Routen*, 142 F.3d at 1440. Although presumptions are rules of law for handling evidence, they are not themselves considered evidence. *Id*. Accordingly, a change that raises the government's evidentiary burden to rebut the presumption of sound condition may not constitute new and material evidence to reopen a finally decided claim.

### C. VA Compliance with Notice Requirements

The appellant argues that VA failed to fulfill its duty to notify under 38 U.S.C. § 5103(a). As amended by the Veterans Claims Assistance Act (VCAA), 38 U.S.C. § 5103(a) requires that VA inform the claimant of the information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to obtain; and (3) that the claimant is expected to provide. 38 U.S.C. § 5103(a). In addition, 38 C.F.R. § 3.159(b)(1) (2005) imposes a fourth requirement that VA "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." *See Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004). These are referred to as the "four VCAA notice requirements." *See Mayfield*, 19 Vet.App. at 122. The provisions of the VCAA apply

to claims to reopen. *See Quartuccio v. Principi*, 16 Vet.App. 183, 186 (2002). Failure to comply with any of the four VCAA requirements may constitute remandable error. *See Pelegrini,* 18 Vet.App. at 121-22; *Quartuccio*, 16 Vet.App. at 188. In addition, a Board failure to provide an adequate statement of reasons or bases as to VCAA compliance may also constitute remandable error. *See* 38 U.S.C. § 7104(a), (d)(1); *Charles v. Principi*, 16 Vet.App. 370, 374 (2002).

The appellant bears the burden of identifying, with specificity, how the notice document(s) are noncompliant with the VCAA notice requirements. *See Mayfield*, 19 Vet.App. at 111. When reviewing a VA notice letter, the letter is read as a whole for compliance with the VCAA. *Mayfield*, 19 Vet.App. at 124. In the event that the Court finds error, it must "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2); *see Mayfield*, 19 Vet.App. at 112-21 (explaining how the Court "take[s] due account of the rule of prejudicial error" both in general, and in the context of VCAA notice).

Establishing service connection generally requires medical evidence of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996). Upon receipt of an application for a service-connection claim, section 5103(a) and § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. *Dingess v. Nicholdson*, __Vet.App.__, No.01-1917 (Mar. 3, 2006); *see also Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (stating that a service-connection claim that provides for disability-compensation benefits consists of the following five elements: "(1) Veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability"); *Fenderson v. West*, 12 Vet.App. 119, 125 (1999) (stating same).

In this case, we deal with VA's obligation in the context of claims to reopen previously and finally disallowed claims. In order to successfully reopen a previously and finally disallowed claim,

8

the law requires the presentation of a special type of evidence–evidence that is both new and material. The terms "new" and "material" have specific, technical meanings that are not commonly known to VA claimants. Because these requirements define particular types of evidence, when providing the notice required by the VCAA, it is necessary, in most cases, for VA to inform claimants seeking to reopen a previously and finally disallowed claim of the unique character of evidence that must be presented. This notice obligation does not modify the requirement that VA must provide a claimant notice of what is required to substantiate each element of a service-connection claim. In other words, VA must notify a claimant of the evidence and information that is necessary to reopen the claim and VA must notify the claimant of the evidence and information that is necessary to establish his entitlement to the underlying claim for the benefit sought by the claimant.

VA's obligation to provide a claimant with notice of what constitutes new and material evidence to reopen a service-connection claim may be affected by the evidence that was of record at the time that the prior claim was finally denied. The new-and-material-evidence regulation that was in effect at the time of the April 2000 RO decision defined "new" to mean evidence "not previously submitted to agency decisionmakers . . . [that] is neither cumulative nor redundant." 38 C.F.R. § 3.156(a) (1999). "Material evidence" was defined to mean evidence that "bears directly and substantially upon the specific matter under consideration" and "is so significant that it must be considered in order to fairly decide the merits of the claim." *Id*. Generally, a claimant is seeking to reopen a finally denied claim for service connection because there is either no evidence on one or more of the three *Caluza* elements to establish service connection or insufficient evidence on one or more of these elements. Therefore, material evidence would be (1) evidence on an element where the claimant initially failed to submit any competent evidence; (2) evidence on an element where the previously submitted evidence was found to be insufficient; (3) evidence on an element where the appellant did not have to submit evidence until a decision of the Secretary determined that an evidentiary presumption had been rebutted; or some combination or variation of the above three situations.

The legislative interest underlying the VCAA notice requirement is the intent of Congress to provide claimants a meaningful opportunity to participate in the adjudication of claims. *See Mayfield*, 19 Vet.App. at 120-21 (stating that section 5103a notice requirement "assumes a fundamental role in furthering an interest that goes to the very essence of the nonadversarial,

pro-claimant nature of the VA adjudication system . . . that is, to assist claimants in the development of their claims); *Quartuccio*, 16 Vet.App. at 186-87 (noting that the intent of Congress in enacting the VCAA was to expand the Secretary's duty to notify). To satisfy this intent, in the context of a claim to reopen a previously denied claim for service connection, the VCAA requires the Secretary to look at the bases for the denial in the prior decision and to respond with a notice letter that describes what evidence would be necessary to substantiate that element or elements required to establish service connection that were found insufficient in the previous denial. Therefore, the question of what constitutes material evidence to reopen a claim for service connection depends on the basis on which the prior claim was denied. *See Evans v. Brown*, 9 Vet.App. 273, 283 (1996) (holding evidence is material if it is relevant to and probative of an issue that was a specified basis for the last final disallowance), *overruled, in part, on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998); *Anglin v. West*, 203 F.3d 1343, 1347 (Fed. Cir. 2000) (stating that *Hodge* left intact the requirement that the evidence must be relevant to and probative of an issue that was a specified basis for the last final disallowance). The Secretary can determine the basis for the denial in the prior decision from the face of that decision.

The failure to provide notice of what constitutes material evidence would generally be the type of error that has the natural effect of producing prejudice because it would constitute a failure to provide a claimant notice of a key element of what it takes to substantiate a claim to reopen. *See Mayfield,* 19 Vet.App. at 122. Without such notice, a claimant effectively would be deprived of an opportunity to participate in the adjudication process because he would not know what evidence was needed to reopen his claim.

While the failure to provide a claimant notice of what constitutes material evidence will almost always be prejudicial, this is not necessarily the case where VA fails to inform the claimant of the necessity to submit new evidence. When a claim for service connection was denied because the evidence (as to one element of the claim) was insufficient, then it is incumbent upon the Secretary to explain that resubmitting the previously submitted evidence will not constitute "new" evidence that will result in reopening the claim. Thus, the Secretary's failure to notify the claimant of the need to submit "new" evidence would generally be prejudicial because it would defeat the fundamental purpose of the notice by failing to inform the claimant of critical information on an essential requirement needed to reopen the claim. On the other hand, if the evidence needed to reopen a claim pertains to an element of the claim for which no evidence has been previously

10

submitted, then any evidence pertaining to that element will, per se, be new. Thus, under these circumstances, if VA provides a claimant with notice of what constitutes material evidence but fails to inform him of what would constitute new evidence, the failure to inform the claimant of the "new" requirement is not prejudicial because the notice on materiality effectively provides the essential information to the claimant regarding what is needed to substantiate the claim. Therefore, the failure to tell a claimant who has not submitted any evidence on a *Caluza*-service-connection element that the evidence must be new would not defeat the fundamental purpose of the notice and would not affect the essential fairness of the proceedings. *See Mayfield,* 19 Vet.App. at 115.

Here, the Board concluded that the appellant was given adequate notice under the VCAA with respect to his attempts to reopen both of his service-connection claims. R. at 4-5. The BVA identified three documents that it concluded provided the appellant with adequate notice under the VCAA: 1) An April 2001 letter from the RO to the veteran; 2) a January 2003 Statement of the Case (SOC); and 3) an April 2003 Supplemental Statement of the Case (SSOC). R. at 4-5. For the reasons discussed below, the Court finds that the Secretary did not fulfill his notice obligations with respect to informing the appellant of the evidence and information that was needed to substantiate his attempts to reopen his claims for service connection for psychogenic gastrointestinal disorder and psoriasis. Because the Court finds that the Secretary failed to provide the appellant adequate notice of what evidence was needed to reopen his claims, the Court need not decide whether the Secretary fulfilled his notice obligation with respect to informing the appellant of the information and evidence that was needed to substantiate his entitlement to the underlying compensation benefits.

*1. Adequacy of VCAA Notice With Regard to Appellant's Attempt to Reopen His Claim for Service Connection for a Psychogenic Disorder*

With regard to the appellant's application to reopen his claim for service connection for psychogenic gastrointestinal disorder, the appellant argues that the notice provided to him failed to satisfy the first, second, and third VCAA requirements (regarding the information and evidence necessary to substantiate the claim and who would be responsible for obtaining the evidence). Appellant's Br. at 11-13. None of the documents identified by the BVA satisfied the first requirement of the VCAA. The April 2001 letter, which purported to advise the appellant of the evidence or information that he needed to substantiate his claim to reopen, did not inform him that he needed new and material evidence to reopen his claim for service connection for his psychogenic

11

disorder. Moreover, the April 2001 letter did not inform the appellant what would constitute new and material evidence to reopen the psychogenic disorder claim.

### a. Notice on Material Evidence

The April 2001 letter does not inform the appellant what would constitute "material" evidence to reopen the psychogenic disorder claim. Under 38 U.S.C. § 5103(a), VA was required to notify the appellant of what constituted "material" evidence in the context of his particular claim to reopen. The appellant's underlying claim had been denied previously on the basis that the appellant's psychogenic disorder was not incurred in service. The RO concluded that the disorder preexisted service and was not aggravated by service. In order for the appellant to substantiate the claim to reopen with evidence that is material, he is required to submit evidence that indicates that the psychogenic disorder either (1) did not preexist service and was incurred therein or (2) was aggravated by service. Consequently, in order to satisfy its obligation under the VCAA to notify the appellant of any "information[] and . . . evidence, not previously provided to the Secretary that is necessary to substantiate the claim" to reopen, the appellant was entitled to notice that he needed evidence that would reflect either that his psychogenic disorder (1) did not preexist service and was incurred therein or (2) was aggravated by service. 38 U.S.C. § 5103(a). The April 2001 letter did not inform the appellant that to substantiate his claim to reopen he needed evidence that indicated that his psychogenic disorder did not preexist service and was incurred therein.

Like the April 2001 letter, neither the January 2003 SOC (R. at 474-85), nor the April 2003 SSOC (R. at 491-93), informed the appellant of the information or evidence needed to substantiate the claim to reopen. Both the SOC and SSOC discussed the regulatory definition of "new and material evidence," as amended in 2001. R. at 479-80, 491-92. *See* Duty to Assist, 66 Fed. Reg. 45,620, 45,630 (Aug. 29, 2001) (codified at 38 C.F.R. § 3.156(a)). However, as the BVA correctly noted, this version of the regulation did not apply to the appellant's claim to reopen since the claim was filed before August 21, 2000. R. at 7. The Court notes that the definition of "new and material evidence" was changed by the 2001 amendments. *See Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1350-51 (Fed. Cir. 2003) (noting that the new regulation differs from the old regulation in defining "new evidence" as "existing" evidence and defining "material evidence" as evidence that "must raise a reasonable possibility of substantiating the claim"). In addition to discussing the wrong regulatory definition of "new and material evidence," the content of the notice provided by the SOC and SSOC was otherwise insufficient. Both documents informed

the appellant that he had not submitted material evidence to reopen his psychogenic disorder claim because he had not submitted evidence that his condition was aggravated in service. R. at 481-82, 492. Like the notice provided in the April 2001 letter, the notice provided in the SOC and SSOC was too narrow in scope. Neither the SOC nor the SSOC informed the appellant that he could substantiate his claim to reopen with information or evidence that indicated that his psychogenic disorder did not preexist service and was incurred therein.

### b. Notice on New Evidence

In addition to notifying the appellant of what would constitute material evidence, VA was also obligated to notify him what would constitute new evidence to reopen the psychogenic gastrointestinal disorder claim. In this regard, the April 2001 letter is inadequate. The evidence at the time VA last denied the claim included the appellant's SMRs, which revealed that he was treated for a condition that was ultimately diagnosed as psychogenic gastrointestinal disorder (R. at 19-33). Because this evidence was relevant as to whether the appellant's psychogenic disorder was either incurred or aggravated in service, VA should have informed the appellant that he needed to submit new evidence regarding his psychogenic disorder claim. However, nowhere in the letter is the appellant informed that evidence would be considered new only if it had not been submitted previously to VA and was neither "cumulative nor redundant" of evidence already in the record. 38 C.F.R. § 3.156(a).

The SOC and SSOC informed the appellant that new evidence was required to reopen his claim; however, these documents used the definition of "new evidence" from the 2001 amendments to § 3.156. As noted above, the amended version of § 3.156(a) changed the definition of "new and material evidence." The SOC and SSOC provided the appellant some notice that evidence submitted must meet the requirement to be new. Nonetheless, the SOC and the SSOC contained another significant flaw that compounded this error and prevented the appellant from effectively and fully participating in the adjudication of his claim. *See Mayfield, supra.* In the latter part of these documents, the appellant was informed that the evidence he had submitted to reopen his claim satisfied the "new evidence" requirement. R. at 481-82, 483-84, 491-92. Thus, these documents contained information that was incomplete and confusing, thereby rendering the VCAA notice inadequate. *See Mayfield*, 19 Vet.App. at 125 (stating that confusing notice about what information and evidence had not been previously provided may amount to a notice deficiency); *Pelea v. Nicholson*, 19 Vet.App. 296 (2005) (noting that incomplete or affirmatively misleading

13

correspondence might discourage a reasonable person from otherwise submitting evidence to substantiate a claim), *appeal dismissed,* No.06-7019, 2005 U.S. App. LEXIS 28138 (Federal Circuit Dec. 1, 2005).

c. Prejudicial Error

Having found a failure to fulfill VA's section 5103(a) notice obligations, the Court must take into account the rule of prejudicial error. Error is prejudicial when it affects a substantial right that the statutory or regulatory provision involved was designed to protect so that the error affects "the essential fairness" of the adjudication. *Mayfield*, 19 Vet.App. at 115. Once an appellant demonstrates a VCAA notice error, he has the burden of going forward with a plausible showing of how the essential fairness of the adjudication was affected by the error. *Id*. at 119. If the appellant makes such a showing, the burden shifts to the Secretary to demonstrate that the error was clearly nonprejudicial, i.e., that the error did not affect the essential fairness of the adjudication. *Id.* at 120. Even though the appellant has not asserted specifically how he was prejudiced by the VCAA error, the "natural effect" of VA's failure to give notice as to the first requirement produced prejudice because it precluded the appellant from participating effectively in the processing of his claim, "thereby substantially defeat[ing] the very purpose of section 5103(a) notice." *Mayfield*, 19 Vet.App. at 122. Accordingly, the burden shifted to the Secretary to demonstrate that there was no clear prejudice. The Secretary argues in his brief that any notice errors were not prejudicial because "the outcome was not affected by VA's alleged failure to comply with the 38 U.S.C. §5103(a) notice requirements." Secretary's Br. at 17. This argument was specifically rejected by the Court in *Mayfield*. *See Mayfield*, 19 Vet.App. at 115. The Secretary has not filed a supplemental brief, pursuant to *In re: 38 U.S.C. § 7261(b)(2) and Mayfield v. Nicholson, 19 Vet.App. 103 (2005)*, Misc. No. 3-05 (June 2, 2005) (en banc order) [hereinafter *Mayfield* order], which allowed him an opportunity to meet his burden of establishing that there was clearly not prejudice to the appellant in this case. Because the Secretary failed to meet this burden, the Court finds that the notice error was prejudicial to the appellant. The Court's conclusion that the Secretary failed to satisfy the first VCAA requirement necessarily subsumes a conclusion that the Secretary also failed to satisfy the second and third VCAA elements (that is who would be responsible for seeking to obtain the information and evidence required by the first notice requirement).

*2. Adequacy of VCAA Notice with Regard to Appellant's Attempt to Reopen His Claim for
Service Connection for Psoriasis*

With regard to the appellant's application to reopen his claim for service connection for psoriasis, he argues that the notice provided to him was inadequate under the first, second, and third VCAA requirements. The appellant's service-connection claim for psoriasis was denied previously on two bases. First, the regional office determined that "[t]here is no record of psoriasis showing a chronic disability subject to service connection." R. at 68. In other words, the RO concluded that the appellant had not established service connection under 38 C.F.R. § 3.303(b) (2005). This regulation provides two alternative methods of establishing service connection–chronicity and continuity of symptomatology. First, chronicity is established if the appellant can demonstrate (1) the existence of a chronic disease in service and (2) present manifestations of the same disease. *See Savage v. Gober*, 10 Vet.App. 488, 495-97 (1997). Alternatively, continuity of symptomatology may be established if the appellant can demonstrate (1) that a condition was "noted" during service; (2) evidence of postservice continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptomatology. *See* 38 C.F.R. § 3.303(b); *Savage,* 10 Vet.App. at 495.

The evidence of record at the time that the RO denied the appellant's claim in 1996 included evidence that the appellant was treated on a single occasion for a skin condition diagnosed as "symmetrical acne" on his face and back. Additionally, the record included postservice medical evidence of treatment for psoriasis. The RO denied service connection under § 3.303(b) because it concluded that the SMRs of "symmetrical acne" were insufficient to prove chronicity of psoriasis in service and that there was insufficient medical evidence to establish a nexus between his current condition and the postservice symptomatology. Essentially, when the RO denied the claim in 1996, it did so on the basis that the appellant had not submitted sufficient evidence to satisfy § 3.303(b). Thus, to reopen a claim for a chronic condition based on § 3.303(b), the appellant would need new evidence, other than the evidence already of record, to demonstrate that his skin condition in service was chronic and the same as his current skin condition, or the appellant would need additional medical evidence to establish a nexus between his current disability and the postservice symptomatology.

In addition, the RO considered direct service connection and concluded that there was no evidence that the appellant's current psoriasis was "caused by service." R. at 69. Thus, the RO denied the claim for direct service connection because it concluded that the appellant had failed to submit any nexus evidence linking his current condition to an event, disease, or injury in service. To reopen the claim on a direct service connection basis, the appellant would need medical nexus evidence, which he had not previously submitted to the RO. In light of the two different reasons for denial of the claim and the two different bases for reopening the appellant's claim, to determine whether the notice complied with the VCAA, we turn to the notice that VA provided the appellant with regard to reopening his psoriasis claim.

### a. Notice on Material Evidence

The April 2001 letter advised the appellant that in order to "establish entitlement for service[-]connected compensation benefits," the evidence must show an injury or disease that began in or was made worse during military service, a current physical or mental disability, and a relationship between the appellant's current medical disability and an injury, disease, or event in service. R. at 143. The letter further explained the importance of medical evidence and suggested that the appellant could send records of the medical treatment he had received dating back to service, lay statements documenting any observable symptoms that had been witnessed since his condition had first been noticed, and medical opinion evidence establishing a relationship between the appellant's current disability and service. R. at 144. Although the April 2001 letter does not use the statutory language that such evidence would constitute material evidence to reopen the psoriasis claim, the letter's discussion of the evidence required to reopen a claim was sufficiently broad so as to encompass both bases upon which the appellant could reopen his claim. The letter conveyed to the appellant the essence of what would be material evidence in the context of his claim to reopen. *See Mayfield*, 19 Vet.App. at 126-27 (stating that "a complying [VCAA] notice need not necessarily use the exact language of the regulation so long as that notice properly conveys to a claimant the essence of a regulation").

### b. Notice on New Evidence

However, the April 2001 letter did not provide adequate notice regarding what would constitute new evidence to reopen the psoriasis claim. VA should have notified the appellant that he needed to submit evidence that was neither "cumulative nor redundant" of the evidence that was previously submitted. While the April 2001 letter indicated what evidence was already in the

16

appellant's file (R. at 144), nothing in the letter indicated how the appellant should consider the evidence already submitted when trying to determine what further evidence was needed. Although the April 2001 letter provided the appellant notice of the evidence or information that was needed to substantiate the "material" element of a claim to reopen, the notice is insufficient in light of the letter's failure to notify the appellant of what information and evidence was needed to substantiate the "new" element of the claim to reopen. For this reason, the Court holds that the April 2001 letter did not inform the appellant adequately of the information and evidence not of record that is necessary to substantiate the claim to reopen the service-connection claim for psoriasis.

The Board also relied on the January 2003 SOC (R. at 474-85) and the April 2003 SSOC (R. at 491-93) to conclude that VA had satisfied the notice obligations of the VCAA. These documents do not satisfy VA's duty to notify under the VCAA. Although the SOC and SSOC informed the appellant that new evidence was required to reopen his claim, these documents used the definition of "new evidence" from the 2001 amendments to § 3.156. In addition to providing the appellant with the wrong definition of "new evidence," the SOC and SSOC informed the appellant that the evidence that he had submitted satisfied the "new" requirement. Because these notice documents provided the appellant with information that was incomplete and confusing, the notice was insufficient. *Mayfield*, *supra*. Therefore, the Court holds that the appellant was not provided adequate notice of the first VCAA requirement. The Secretary's failure to satisfy the first VCAA requirement necessarily subsumes a conclusion that he also failed to satisfy the second and third VCAA elements.

c. Prejudicial Error

Having found a failure to fulfill the Secretary's section 5103(a) notice obligations, the Court must again take into account the rule of prejudicial error. *Mayfield*, *supra*. As indicated above, a failure to explain the new-evidence requirement is not generally prejudicial where VA has provided adequate notice as to what would constitute material evidence to reopen the claim and that any material evidence would necessarily be new as well. In this regard, the two different bases upon which the appellant could reopen his claim become important. As to the direct-service-connection basis for reopening the claim, material evidence would be evidence relating to the element, for which he had failed to submit any competent evidence, i.e., a medical nexus between his current psoriasis and his in-service skin condition. As to this basis for reopening, the failure to explain the concept of new evidence is not prejudicial because any nexus evidence would necessarily be new evidence.

17

However, as to reopening of the claim based on § 3.303(b), the failure to explain the importance of new evidence is prejudicial. The 1996 RO decision considered his SMRs and postservice medical evidence and found that the evidence was insufficient to prove service connection under § 3.303(b). Therefore, to reopen a claim on this basis, the appellant needed new evidence where the evidence had previously been weighed and found wanting. In other words, he needed something other than the previously submitted SMRs and postservice medical evidence to support the proposition that his in-service condition was chronic psoriasis. However, it was not clear from the April 2001 letter that cumulative and redundant evidence–such as the duplicative SMRs submitted by the appellant (R. at 28)–would not be sufficient to reopen the claim. Moreover, when the SOC and the SSOC provided wrong and confusing information, the "natural effect" of VA's failure to give notice as to the requirement that the appellant submit "new" evidence effectively deprived him of an opportunity to participate in the adjudication process because he was not informed of the new evidence that was needed to reopen his claim. *Mayfield*, 19 Vet.App. at 122. As with appellant's psychogenic gastrointestinal claim, the Secretary argues that any notice error is harmless in this case because the outcome would not have been different. Secretary's Br. at 17. The Secretary has chosen not to submit a supplemental brief on this issue pursuant to the *Mayfield* order. As noted above, this argument was specifically rejected by the Court in *Mayfield*. *See Mayfield*, 19 Vet.App. at 115. Thus, the Secretary has not sustained his burden in this case to demonstrate that there was clearly no prejudice to the appellant based on his failure to give notice as to the first VCAA requirement. Hence, a remand is required for notice that adequately explains to the appellant what evidence he must submit in support of his psoriasis claim. As a claim for service connection includes all theories under which service connection may be granted, *see Bingham v. Principi*, 18 Vet.App. 470, 474 (2004), the Court notes that this remand does not limit the appellant to pursuing a theory of service connection under § 3.303(b) on remand even though the VCAA letter was prejudicially erroneous only as to that theory.

### III. CONCLUSION

After consideration of the appellant's and the Secretary's briefs, and a review of the record, the Board's October 8, 2003, decision is VACATED and the matters are REMANDED to the Board for further proceedings consistent with this decision.

18