Citation Nr: 1450472 
Decision Date: 11/14/14 Archive Date: 11/26/14

DOCKET NO. 10-08 298A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for melanoma, to include as due to exposure to herbicides. 

2. Whether new and material evidence has been received to reopen a claim of service connection for prostate cancer, to include as due to exposure to herbicides. 

3. Entitlement to service connection for type 2 diabetes mellitus, to include as due to exposure to herbicides. 

4. Entitlement to service connection for bilateral lower extremity peripheral neuropathy, to include as due to exposure to herbicide and as secondary to type 2 diabetes mellitus. 

5. Entitlement to service connection for erectile dysfunction, to include as due to exposure to herbicide and as secondary to type 2 diabetes mellitus.



REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

T. Casey, Associate Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from June 1965 to June 1967. These matters are before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of the Nashville, Tennessee Department of Veterans Affairs (VA) Regional Office (RO). Although the RO reopened (and considered de novo) the Veteran's claims of service connection for melanoma and for prostate cancer in the June 2009 rating decision, the question of whether new and material evidence has been received to reopen such claims must be addressed in the first instance by the Board because the issue goes to the Board's jurisdiction to reach the underlying claims and adjudicate them on a de novo basis. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2011); Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). If the Board finds that no such evidence has been offered, that is where the analysis must end; hence, what the RO may have determined in this regard is irrelevant. Barnett, 83 F.3d at 1383. The Board has characterized the issues accordingly. 

The Veteran had also initiated an appeal of the denial of service connection for hearing loss. A February 2010 rating decision granted service connection for bilateral hearing loss, rated 0 percent, effective March 24, 2009. Consequently, that matter is not before the Board. 




FINDINGS OF FACT

1. The Veteran is not shown to have served in the Republic of Vietnam or any 
other designated area where the service department has determined that herbicide agents were used, and is not shown to have been otherwise exposed to herbicides/Agent Orange during service. 

2. An October 2005 rating decision denied the Veteran service connection for melanoma essentially based on findings that such disability was not manifested in, or shown to be related to, his service, and that he was not entitled to consideration of his claim under the presumptive provisions of 38 U.S.C.A. § 1116; he initiated, but did not perfect, an appeal in the matter. 

3. Evidence received since the October 2005 rating decision does not tend to show that the Veteran's melanoma was manifested in, or is related to, his service; does not relate to an unestablished fact necessary to substantiate the claim of service connection for melanoma; and does not raise a reasonable possibility of substantiating such claim. 

4. An October 2005 rating decision denied the Veteran service connection for prostate cancer essentially based on findings that such disability was not manifested in, or shown to be related to, his service, and that he was not entitled to consideration of his claim under the presumptive provisions of 38 U.S.C.A. § 1116; he initiated, but did not perfect, an appeal in the matter. 

5. Evidence received since the October 2005 rating decision does not tend to show that the Veteran's prostate cancer was manifested in, or is related to, his service; does not relate to an unestablished fact necessary to substantiate the claim of service connection for prostate cancer; and does not raise a reasonable possibility of substantiating such claim. 

6. The Veteran's type 2 diabetes mellitus was not manifested in service, or in the first postservice year; and the preponderance of the evidence is against a finding that it is related his service.
7. The Veteran's bilateral lower extremity peripheral neuropathy was not manifested in service, or in the first postservice year, and the preponderance of the evidence is against a finding that it is related to his service (or was caused or aggravated by a service-connected disability). 

8. The Veteran's erectile dysfunction was not manifested in service, and the preponderance of the evidence is against a finding that it is related to his service (or was caused or aggravated by a service-connected disability). 


CONCLUSIONS OF LAW

1. New and material evidence has not been received, and the claim of service connection for melanoma may not be reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2002); 38 C.F.R. § 3.156(a) (2014). 

2. New and material evidence has not been received, and the claim of service connection for prostate cancer may not be reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2002); 38 C.F.R. § 3.156(a) (2014). 

3. Service connection for type 2 diabetes mellitus is not warranted. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014). 

4. Service connection for bilateral lower extremity peripheral neuropathy is not warranted. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2014). 

5. Service connection for erectile dysfunction is not warranted. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2014). 




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A (West 2002 & Supp. 2014) have been met. By correspondence dated in April 2009, VA notified the Veteran of the information needed to substantiate his service connection claims, to include notice of the information that he was responsible for providing and of the evidence that VA would attempt to obtain, as well as notice of how VA assigns disability ratings and effective dates. 

In a claim to reopen a previously finally denied claim, VCAA notice must notify the claimant of the meaning of new and material evidence and of what evidence and information is (1) necessary to reopen the claim; (2) necessary to substantiate each element of the underlying service connection claim; and (3) specifically required to substantiate the element or elements needed for service connection that were found insufficient in the prior final denial on the merits. Kent v. Nicholson, 20 Vet. App. 1 (2006). Such notice was also provided in April 2009. It is not alleged that notice was less than adequate. 

The Veteran's service treatment records (STRs) and pertinent postservice treatment records have been secured. VA has not provided the Veteran an examination in connection with these claims. 38 U.S.C.A. § 5103A(d). However, regarding the service connection claims, an examination is not necessary as there is no evidence that suggests that diabetes mellitus, bilateral lower extremity peripheral neuropathy, or erectile dysfunction may be related to the Veteran's service. Regarding the claims to reopen, the Board observes that in such claims VA's duty to assist by arranging for an examination or securing a medical opinion is not triggered unless the claim is in fact reopened. 38 C.F.R. § 3.159(c)(4)(iii); see Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs, 345 F.3d 1334, 1342-43 (Fed. Cir. 2003). 

The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met. 

Legal Criteria, Factual Background, and Analysis

The Board has reviewed the Veteran's entire record with an emphasis on the evidence relevant to these appeals. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claims. 

Generally, an unappealed rating decision is final based on the evidence of record at the time of the decision, and may not be reopened or allowed based on such evidence. 38 U.S.C.A. § 7105. However, if new and material evidence is presented or secured with respect to a claim that has been disallowed, VA shall reopen the claim and review the former disposition of the claim. 38 U.S.C.A. § 5108.

"New" evidence means existing evidence not previously submitted to agency decision-makers. "Material" evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). When determining whether the claim should be reopened, the credibility of the newly submitted evidence is to be presumed. Fortuck v. Principi, 17 Vet. App. 173, 179-80 (2003). 

The requirement of new and material evidence raising a reasonable possibility of substantiating the claim is a low threshold. Shade v. Shinseki, 24 Vet. App. 110 (2010). Specifically, the language of 38 C.F.R. § 3.156(a) creates a low threshold, and the phrase "raises a reasonable possibility of substantiating the claim" is viewed as "enabling rather than precluding reopening." Id. at 121. 

Service connection may be granted for disability resulting from personal injury suffered or disease contracted during active military service, or for aggravation of a pre-existing injury suffered, or disease contracted, during service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was contracted in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability there must be evidence of: (1) a present disability for which service connection is sought; (2) incurrence or aggravation of a disease or injury in service; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 

A Veteran who, during active naval service, served in the Republic of Vietnam during the Vietnam era (beginning in January 1962 and ending in May 1975) shall be presumed to have been exposed during such service to certain herbicide agents, including an herbicide commonly referred to as Agent Orange. 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii). The Department of Defense (DoD) has determined that herbicide (including Agent Orange) was used along the Korean demilitarized zone (DMZ) from April 1, 1968, to August 31, 1969; Veterans assigned to one of the units listed as being at or near the Korean DMZ during that time period are also presumed to have been exposed to herbicide agents. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307(a)(6)(iv). 

If a Veteran was exposed to an herbicide agent (to include Agent Orange) during active service and has contracted an enumerated disease (to include prostate cancer, type 2 diabetes, or acute or subacute peripheral neuropathy), such Veteran is entitled to a presumption of service connection for such disease even though there is no record of such disease during service. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309(e). When a claimed disorder is not included as a presumptive disorder under 38 C.F.R. § 3.309(e), direct service connection may nonetheless be established by evidence demonstrating that the disease was in fact "incurred" during service. See Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994). 

Certain chronic diseases (including malignant tumors and diabetes mellitus) may be service-connected on a presumptive basis if manifested to a compensable degree within a specified period of time postservice (one year for malignant tumors, diabetes mellitus, or peripheral neuropathy). 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. 

Service connection is warranted for disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a). To establish secondary service connection for a disability there must be evidence of: (1) a current disability (for which secondary service connection is sought); (2) an already service-connected disability; and (3) that the current disability was either (a) caused or (b) aggravated by the service-connected disability. 38 C.F.R. § 3.310(a); see Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

New and Material Evidence to Reopen

The Veteran filed an original claim of service connection for melanoma and prostate cancer in June 2005, which was denied by an October 2005 rating decision based essentially on findings that such diseases were not manifested in service, or for many years thereafter, and there was no evidence of exposure to herbicides in service (so as to warrant consideration under 38 U.S.C.A. § 1116). The Veteran initiated an appeal of the denials, but did not perfect the appeal after a statement of the case was issued. Consequently, the October 2005 decision is final. 38 U.S.C.A. § 7105. 

Evidence of record at the time of the October 2005 rating decision:

The Veteran's service personnel records show that he was assigned to the Headquarters and Headquarters Company, 1st Battalion, 72nd Armor Regiment, in Korea from November 1965 to December 1966. His DD Form 214 shows that his military occupational specialty (MOS) was armor crewman. 
The Veteran's STRs, including a June 1967 service separation examination are silent for any complaints, treatment, findings, or diagnosis regarding melanoma, prostate cancer, type 2 diabetes, peripheral neuropathy, or erectile dysfunction. 

July 2004 private treatment records from E.K., M.D., show a diagnosis of erectile dysfunction, and that the Veteran underwent surgery for adenocarcinoma of the prostate which was found on April 2004 biopsy. 

March 2005 private treatment records and an April 2005 letter from E.B., M.D., indicate the Veteran had a metastatic malignant melanoma of a right postauricular lymph node removed. 

April and May 2005 private treatment records from B.A., M.D., show the Veteran underwent node sampling of the upper neck and chemotherapy. 

A May 2005 private treatment record from D.N., M.D., notes the Veteran had a history of a right postauricular lymph node that was positive for metastatic melanoma. 

A July 2005 private treatment record from L.C., M.D., shows the Veteran had a history of metastatic melanoma status post radical lymph node dissection and was undergoing chemotherapy. 

Evidence received since the October 2005 rating decision:

Service personnel records submitted by the Veteran show his MOS, unit, and the locations where he was stationed during service. 

September 2005 and March 2006 private treatment records from Dr. E.K. show a diagnosis of status post right neck dissection for melanoma. September 2006 and October 2007 and 2008 letters from Dr. E.K. indicate the Veteran had a radical prostatectomy in July 2004. 

August 2005 through March 2008 private treatment records from Dr. B.A. show a history of prostate cancer and a lymph node dissection of the right side of the neck for melanoma, and a diagnosis of type 2 diabetes in March 2008. 

A March 2005 private radiology report from St. Mary's North notes a computed tomography (CT) scan of the neck revealed an enlarged lymph node posterior to the right ear, and a history of prostate cancer. 

March and May 2005 private laboratory reports from Innovative Pathology Services show malignant cells were present in a right postauricular lymph node.

An April 2005 private treatment record from N.D., M.D., indicates a CT scan was negative for a nodule in the right postauricular region. 

A January 2009 letter and treatment records from A.O., a neurologist, states she evaluated the Veteran for complaints of numbness in his feet and pain in his legs, and that a nerve conduction study/electromyography found diffuse sensorimotor peripheral neuropathy. 

March 2009 VA treatment records show diagnoses of malignant melanoma status post right radical neck lymph node dissection, prostate cancer status post radical prostatectomy, type 2 diabetes mellitus, peripheral sensory neuropathy, and erectile disorder. The Veteran reported that diabetes was diagnosed 3-4 years earlier. 

In a July 2009 private treatment record, Dr. A.O. states "We discussed again if [the Veteran's] past history involved in the wars of Korea and Vietnam. It is not clear if he was exposed to agent orange. However, it also cannot be excluded." The assessment was peripheral neuropathy. Dr. A.O. indicated that the Veteran "has possible exposure to agent orange but it's not clear. If he did have exposure to agent orange, it's another problem that may contribute to peripheral neuropathy." 

An internet article from Cyber Sarge's indicates that the Department of Defense has stated that in 1968 and 1969 Agent Orange was sprayed in an area from the Civilian Control Line to the southern boundary of the Korean DMZ, and that it is plausible that U.S. service members in the area near spraying operations may have been exposed to Agent Orange during that period. 

In a July 2009 statement, the Veteran asserted that he believes he was exposed to Agent Orange in service, and that herbicides were sprayed in Korea from November 1965 to December 1966. He noted that he has several illnesses that are presumed related to herbicide exposure. 

Because the Veteran's claims of service connection for melanoma and for prostate cancer were previously denied based essentially on findings that they were not shown to have been manifested during service and that exposure to herbicides in service was not shown, for evidence to be new and material it would have to relate to these unestablished facts; i.e., it would have to tend to show that the Veteran's melanoma and prostate cancer are related to his service, or that he was exposed to herbicides therein. None of the newly submitted evidence positively addresses either of these unestablished facts. To the extent that medical evidence relates any claimed disabilities it is only by virtue of presumptions afforded based on exposure to Agent Orange (which is not shown). The evidence submitted showing Agent Orange was used in Korea specifies it was after the Veteran's period of service in that country (and therefore does not positively bear on his claim). He does not cite to any service department acknowledgment (or other probative evidence) that herbicides were used in Korea when he was stationed there. Therefore, none of the newly submitted evidence is material. Additional evidence received indicating that the Veteran has had malignant melanoma and prostate cancer is not new because it is cumulative; these facts were previously established and are not in dispute. 

Statements from the Veteran reflecting his own belief that he was exposed to herbicides during service are not new because they are cumulative and redundant of his previous statements. [Notably, the internet article from Cyber Sarge's is also cumulative evidence as it merely reflects DoD's finding that herbicides (including Agent Orange) were used along the Korean DMZ from April 1, 1968, to August 31, 1969, which is embodied in VA regulations under 38 C.F.R. § 3.307(a)(6)(iv), and was considered in the October 2005 decision.] 

In summary, no additional evidence received provides new information that relates positively to an unestablished fact necessary to substantiate the Veteran's claims of service connection for melanoma and for prostate cancer. No evidence submitted since the October 2005 rating decision is new evidence that tends to show that either melanoma or prostate cancer was incurred in service, or that he was indeed exposed to herbicides therein (so as to afford him consideration of the claims under applicable presumptive provisions). Consequently, the evidence does not raise a reasonable possibility of substantiating the claims. Therefore, the evidence received since the October 2005 rating decision is not new and material, and the claims of service connection for melanoma and for prostate cancer may not be reopened. 

Type 2 Diabetes Mellitus

The Veteran's theory of entitlement to this benefit is strictly one of presumptive service connection, i.e., that the disability is due to his exposure to herbicides in service. See 38 U.S.C.A. § 1116. The evidence does not show (and it is not alleged) that diabetes mellitus was manifested in service or during the Veteran's first postservice year. Consequently, service connection for such disability on the basis that it became manifest in service, or on a presumptive basis (as a chronic disease under 38 U.S.C.A. § 1112) is not warranted. 

Notably, there is no evidence, nor has the Veteran claimed, that he served in the Republic of Vietnam. Rather, he claims herbicide exposure from his service in Korea. His service personnel records show that he indeed served in Korea (from November 1965 to December 1966), where he was assigned to the Headquarters and Headquarters Company, 1st Battalion, 72nd Armor Regiment. However, the dates of his service in Korea fall outside of, and prior to, the period during which the DoD has determined that herbicide agents were used along the Korean DMZ. The Veteran has not submitted any evidence showing that he was in fact exposed to herbicide agents during his service. As there is no evidence in the record that he served in Vietnam, or at or near the Korean DMZ from April 1, 1968, to August 31, 1969, or was otherwise exposed to herbicide agents during service, the presumptive provisions of 38 U.S.C.A. § 1116 (for disabilities due to herbicide exposure) do not apply. 
The Veteran may still establish service connection for diabetes with proof of a nexus between such disease and his service. He has not submitted any evidence supporting that there is such a nexus. VA and private treatment records only note the diagnosis and treatment of diabetes mellitus; there is nothing in the records to suggest that the diabetes is, or may, be related to the Veteran's service (other than by virtue of exposure to herbicides, which is not shown). VA treatment records note that diabetes was diagnosed in about March 2005 (about 38 years after his separation from service); private treatment records note that diabetes was diagnosed in March 2008. Regardless of which report is more accurate, such a lengthy time interval between service and the earliest postservice clinical documentation of the disability is of itself a factor for consideration against a finding of service connection. 

In light of the foregoing, the Board concludes that the preponderance of the evidence is against a finding that the Veteran's type 2 diabetes mellitus is in any way related to his service. Accordingly, the appeal for service connection for such disability must be denied. 

Bilateral Lower Extremity Peripheral Neuropathy and Erectile Dysfunction

The Veteran alleges that his bilateral lower extremity peripheral neuropathy is due to exposure to herbicides in service or is secondary to his type 2 diabetes mellitus, and that his erectile dysfunction is also secondary to diabetes. Peripheral neuropathy of the lower extremities and erectile dysfunction were not manifested in service (nor is it so alleged), and service connection for the disabilities on that basis is not warranted. It is not in dispute that diagnostic studies have shown that the Veteran has peripheral neuropathy of the lower extremities. It is also not in dispute that he has erectile dysfunction. To establish service connection for such disabilities, he must still show that they were incurred or aggravated in service. [Notably, his secondary service connection theory of entitlement lacks legal merit, as service connection for diabetes has been denied. See 38 C.F.R. § 3.310.] Furthermore, as it is not shown that the Veteran was exposed to herbicides in service, consideration of these claims under 38 U.S.C.A. § 1116 is not warranted. The Veteran has not submitted any evidence supporting, and the record does not suggest, that either of these disabilities may somehow otherwise be related to his service. 

In light of the foregoing, the Board finds that the preponderance of the evidence is against a finding that either the Veteran's peripheral neuropathy of the lower extremities or his erectile dysfunction is related to his service. Accordingly, the appeals in these matters must be denied. 


ORDER

The appeal to reopen a claim of service connection for melanoma, to include as due to exposure to herbicides, is denied. 

The appeal to reopen a claim of service connection for prostate cancer, to include as due to exposure to herbicides, is denied. 

The appeal seeking service connection for type 2 diabetes mellitus, to include as due to exposure to herbicides, is denied. 

The appeal seeking service connection for bilateral lower extremity peripheral neuropathy, to include as due to exposure to herbicides or as secondary to type 2 diabetes mellitus, is denied. 

The appeal seeking service connection for erectile dysfunction, to include as due to exposure to herbicides or as secondary to type 2 diabetes mellitus, is denied. 


____________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals 

Department of Veterans Affairs