Citation Nr: 1554493 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 06-30 049 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a skin disability, to include as due to exposure to certain herbicide agents.

2. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a chronic lung condition, to include as due to exposure to asbestos. 

3. Entitlement to service connection for heart disease, to include coronary artery disease, include as due to exposure to herbicide agents. 

4. Entitlement to service connection for chronic sinusitis. 

5. Entitlement to service connection for a vision disability.

6. Entitlement to service connection for psychiatric disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Department of Veterans Affairs


INTRODUCTION

The Veteran had active service from September 1964 to September 1968. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan. 

Although the Veteran petitioned to reopen a claim of entitlement to service connection for PTSD, the issue must be readjudicated on a de novo basis. See Vigil v. Peake, 22 Vet. App. 63, 66-67 (2008).

In October 2009 the Board remanded the case to the RO for further development. 

The issues of entitlement to service connection for a chronic lung condition and a psychiatric disability are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In an August 1996 rating decision, the RO denied a claim of entitlement to service connection for a skin disability. The Veteran did not perfect an appeal of the rating decision.
 
2. Evidence received since the August 1996 rating decision relates to an unestablished fact necessary to substantiate the claim of service connection for a skin disability, and raises a reasonable possibility of substantiating the underlying claim. 

3. In a September 1995 rating decision, the RO denied a claim of entitlement to service connection for a chronic lung condition. The Veteran did not perfect an appeal of the rating decision.
 
4. Evidence received since the September 1995 rating decision relates to an unestablished fact necessary to substantiate the claim of service connection for a chronic lung condition, and raises a reasonable possibility of substantiating the underlying claim. 

5. The Veteran served in the inland waterways of the Republic of Vietnam during the Vietnam era. 

6. The Veteran is diagnosed with coronary artery disease, status post myocardial infarction. 

7. The Veteran has not had chronic sinusitis during the appeal period.

8. The Veteran has not had a vision disability during the appeal period.


CONCLUSIONS OF LAW

1. The August 1996 rating decision, which denied the Veteran's claim of service connection for a skin disability, is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 20.302, 20.1103 (2015). 
 
2. New and material evidence sufficient to reopen the previously denied claim of service connection for a skin disability has been received. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

3. The September 1995 rating decision, which denied the Veteran's claim of service connection for a chronic lung condition, is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 20.302, 20.1103 (2015). 
 
4. New and material evidence sufficient to reopen the previously denied claim of service connection for a chronic lung condition has been received. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

5. The Veteran's coronary artery disease, status post myocardial infarction, is presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309(e) (2015).

6. The criteria for service connection for chronic sinusitis have not been met. 38 U.S.C.A. §§ 1110, 1117, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

7. The criteria for service connection for a vision disability have not been met. 38 U.S.C.A. §§ 1110, 1117, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015).

A standard letter sent to the Veteran in July 2005 satisfied the duty to notify provisions regarding the service connection claims decided here.

In an application to reopen based on new and material evidence, VA must both notify a claimant of the evidence and information that is necessary to reopen the claim and of the evidence and information that is necessary to establish entitlement to the underlying claim for the benefit that is being sought. Kent v. Nicholson, 20 Vet. App. 1 (2006). To satisfy this requirement, VA is required to look at the bases for the denial in the prior decision and to provide the claimant with a notice letter that describes what evidence would be necessary to substantiate those elements required to establish service connection that were found insufficient in the previous denial.

In this case, the RO sent the appellant a letter with enclosures dated in November 2009 and November 2010 that complied with statutory notice requirements regarding the petition to reopen the skin claim. Therein, the RO notified the appellant of the evidence obtained, the evidence VA was responsible for obtaining, and the evidence necessary to establish entitlement to the benefits sought including the types of evidence that would assist in this matter. Thereafter, the RO readjudicated the new and material evidence claims in a Supplemental Statement of the Case in April 2014. 

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c).

The Veteran's service treatment records and personnel records have been obtained. Post-service VA and private treatment records have also been obtained. 

VA did not afford the Veteran an examination of the Veteran's claimed chronic sinusitis or visual disability. However, as there is no indication that the disability is related to service, either through recurrent symptoms or a diagnosis, an examination is not necessary under 38 C.F.R. § 3.159(c) (4). McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). 

Thus, VA's duty to assist has been met.

II. Petition to Reopen Claims of Entitlement to Service Connection

The Veteran first filed a claim of entitlement to service connection for a skin disability in July 1979, when he claimed service connection for a skin rash. 

The RO denied that claim in a November 1979 rating decision on the basis that service treatment records showed no indication of the claimed disability; and the Veteran's service organization indicated that there was no indication in the Veteran's records of exposure to herbicides. He did not appeal that rating decision.

In June 1992 the Veteran submitted a claim for disability for skin rashes that began in October 1991. Then in an annotated document sent in May 1995 the Veteran claimed skin disability secondary to Agent Orange exposure; and a lung disease.

In a September 1995 rating decision the RO denied service connection for (1) lung disease secondary to asbestos exposure, and for (2) service connected residuals (skin disability) secondary to exposure to Agent Orange. 

In the September 1995 rating decision the RO denied service connection for these claimed conditions on the respective bases that (1) exposure to asbestos in service was not verified, service treatment records showed no complaints or treatment for lung condition, and current VA examination findings showed only a history of mild pulmonary disease with smoking; and (2) service treatment records showed no complaint or treatment for a skin condition and skin was normal at separation, and current VA examination findings were diagnosed as folliculitis unrelated to service.

In August 1996, the Veteran timely filed a notice of disagreement to initiate an appeal of the September 1995 rating decision; however, after the RO issued a statement of the case in August 1996, the Veteran did not file a substantive appeal, VA Form 9, to perfect the appeal. 

In a later August 1996 rating decision the RO denied service connection for residuals of Agent Orange exposure, on the basis that the Veteran is not shown to suffer from a specific disability caused by exposure to herbicides in Vietnam. The RO found that there was no evidence of a nexus between any Agent Orange exposure and any diagnosed disability. The Veteran did not appeal from this rating decision.

Because the Veteran did not perfect an appeal to the September 1995 rating decision or initiate an appeal as to the August 1996 rating decision, or submit new and material evidence within one year of either rating decision that was not considered in the August 1996 statement of the case, the decisions are final as to the appealed claims to reopen. 38 U.S.C.A. § 7105(c); 38 C.F.R. §§ 3.156(b), 20.302, 20.1103. 

Although the prior decisions are final, if new and material evidence is presented or secured with respect to a claim that has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 38 U.S.C.A. § 5108; Manio v. Derwinski, 1 Vet. App. 140, 145 (1991). 

Under 38 C.F.R. § 3.156(a), evidence is considered "new" if it was not previously submitted to agency decision makers. "Material" evidence is evidence which, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. For the purpose of determining whether a case should be reopened, the credibility of the evidence added to the record is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

The United States Court of Appeals for Veterans Claims (Court) has clarified that the phrase "raises a reasonable possibility of substantiating the claim" is meant to create a low threshold that enables, rather than precludes, reopening. Shade v. Shinseki, 24 Vet. App. 110 (2010). Specifically, the Court stated that reopening is required when the newly submitted evidence, combined with VA assistance and considered with the other evidence of record, raises a reasonable possibility of substantiating the claim. Id. 
 
In the current claim to reopen the RO determined in a February 2006 rating decision that the evidence submitted since the September 1995 and August 1996 rating decisions was not new and material so as to reopen the claims of service connection for a chronic lung condition, or a skin disability. 

Subsequently, in an April 2014 Supplemental Statement of the Case the RO determined that new and material evidence received was sufficient to reopen the Veteran's claims and denied each on the merits. However, RO decisions are not binding on the Board and, the Board must first decide whether new and material evidence has been received to reopen the Veteran's claim. Barnett v. Brown, 83 F.3d 1380 and 1383-84 (Fed. Cir. 1996).

Chronic Lung Condition

Regarding the appealed a chronic lung condition claim, the record prior to September 1995 contains no evidence during service of complaints, treatment or diagnosis for pulmonary problems. The report of VA examination in September 1992 shows that the examiner found the respiratory system was normal. 

A July 1995 VA general examination report includes a history of mild pulmonary disease; the only symptoms are occasional chest pain at the right costal margin and exertional shortness of breath when he moves furniture. He did not have coughing, asthma, tuberculosis, pneumonia, or pleurisy. The Veteran reported he smoked for the past 44 years. He had a heavy use but he cut it down to one pack per week of late. During the July 1995 VA general examination, the respiratory system was clear to auscultation without wheezing, rhonchi, or rales. An associated chest X-ray examination report noted that the Veteran was a long-standing smoker; and that lung fields were free of active disease. After examination the diagnosis was that the Veteran had a history of mild pulmonary disease, with 44 years of smoking. 

The additional records received since September 1995 include VA and private treatment records, Social Security Administration records, and reports of VA examinations in June 1998 (general), July 2002 (general), and April 2011 (psychiatric/PTSD); and statements from the Veteran. 

Private medical records received since September 1995 include the report of a June 1989 examination by Michael J. Simpson, M.D., received at the RO in March 2010. Dr. Simpson noted that chief complaints included chest pain and shortness of breath. The Veteran reported a four year history of shortness of breath that has been related to chronic bronchitis. After examination, the report contains a concluding diagnosis of mild chronic obstructive lung disease. The examiner commented that the Veteran described a four year history of dyspnea and that the Veteran had a fairly long smoking history. 

The June 1998 VA general examination shows that on examination the lungs were clear to percussion and auscultation. 

The July 2002 VA general examination shows that the Veteran reported that for the past year he had had a sensation of burning pain in his lungs; and that in August 2001 he had inhaled some smoke from burning toxic sand, with subsequent intermittent aching in the lungs and some increased shortness of breath. On examination the lungs were clear to percussion and auscultation; chest X-ray examination revealed no significant abnormality; and the report contains a diagnosis of history of tobacco abuse. 

In the Veteran's May 2005 application for VA benefits he reported having asbestosis that occurred in 1967, with treatment ending in April 2005. He reported that he was exposed to asbestos aboard the USS DAVIDSON AND USS SOUTHERLAND.

As discussed above, the evidence received since the last final decision on the matter does raise a reasonable possibility of substantiating the claim, and therefore warrants reopening of the claim. Some of the additional records received contain evidence relating to an unestablished fact necessary to substantiate the claim, specifically, competent evidence of an etiological relationship between service and the Veteran's mild pulmonary disease, which by competent medical evidence has been associated with a long-term history of smoking. See 38 C.F.R. § 3.156. 

Additional statements of the appellant address his description of symptoms since service, symptoms to which he is competent report and which for purposes of reopening the Board must treat as credible. Justus.

Accordingly, the Board finds that the evidence received after the September 1995 rating decision is new and material and serves to reopen the claim for service connection for a chronic lung condition. Therefore, the appellant's previously denied claim for service connection for a chronic lung condition is reopened. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156(a). This claim is further addressed in the Remand below.

Skin Disability

Prior to the final rating decision of August 1996, the record included service personnel records showing the Veteran served in the Navy with assignment on the USS DAVIDSON. He received the Vietnam Service Medal for service on board the USS DAVIDSON. A VA Form 07-3101, VA Request for Information, shows that the National Personnel Records Center (NPRC) forwarded available service and medical records, and commented that there was no indication in service and medical records of any exposure of the Veteran to herbicides during service.

The record included service treatment records showing that at the time of the September 1964 enlistment examination, the examiner found that the Veteran had mild acne of the face, with no other abnormalities of the skin. Service treatment records show no indication of complaints or treatment for skin problems during service; and at the September 1968 discharge examination the evaluation was normal for any such condition.

Prior to the last final rating decision of August 1996, the first medical evidence of a skin disorder is shown in a March 1975 VA hospital summary showing complaints of a skin rash that had spread over the Veteran's trunk over the previous year. The report contains a diagnosis of tinea versicolor. 

During a July 1995 VA Agent Orange examination, the Veteran reported complaints including of a rash. On examination the skin was normal. An associated July 1995 VA skin examination report shows that the Veteran reported complaints of rash occasionally pruritic on his trunk since 1968. That report contains an impression of probable folliculitis. 

The additional records received since August 1996 include VA and private treatment records, Social Security Administration records, and reports of VA examinations in June 1998 (general), July 2002 (general), and April 2011 (psychiatric/PTSD); and statements from the Veteran. 

Private medical records received since September 1995 include the report of a June 1989 examination by Michael J. Simpson, M.D., received at the RO in March 2010. That report shows that examination of the skin showed that turgor was normal and there were no rashes.

During the June 1998 VA general examination the Veteran reported no skin-related complaints and the report contains no abnormal skin findings or diagnoses. 

During the July 2002 VA general examination the Veteran reported no skin-related complaints. On examination the skin was of normal texture, turgor, and pigmentation; and the report contains no diagnosis regarding the skin.

In the Veteran's May 2005 application for VA benefits he reported having skin problems that occurred in 1967, with treatment ending in April 2005. He reported that he was exposed to Agent Orange in Vietnam, Thailand, China, Japan, Mexico, Panama, Puerto Rico, Korea, and Philippines. The Veteran is competent to report on skin symptoms since service. 

The evidence received since the last final decision on the matter raises a reasonable possibility of substantiating the claim, and therefore would warrant reopening of the claim. Some of the additional records received contains evidence relating to an unestablished fact necessary to substantiate the claim, specifically, competent evidence of recurrent skin symptoms since service. See 38 C.F.R. § 3.156. Additional statements of the Veteran since the last final rating decision on this matter are not cumulative of evidence available at that time. 

Accordingly, the Board finds that the evidence received after the August 1996 rating decision is new and material and serves to reopen the claim for service connection for a skin disability. Therefore, the appellant's previously denied claim for service connection for a skin disability is reopened. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156(a). This claim is further addressed in the Remand below.
 
III. Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2015). "To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Some chronic diseases, including cardiovascular-renal disease or endocarditis, are presumed by law and regulation to have been incurred in service even though there is no evidence of such disease during the period of service, if they become manifest to a degree of ten percent or more within a corresponding applicable presumptive period, and if following a period of service of 90 days or more of continuous active service. 38 U.S.C.A. §§ 1101, 1112 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

Entitlement to service connection on the basis of a continuity of symptomatology after discharge under 38 C.F.R. § 3.303(b) is only available for the specific chronic diseases, including psychoses, listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection may be granted if a disability is proximately due to or the result of a service-connected disability or if aggravation of a nonservice-connected disorder is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310 (2015).

Service connection may only be granted for a current disability; when a claimed condition is not shown, there may be no grant of service connection. See 38 U.S.C.A. § 1110; Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability). Without proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises and statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a) (1) (2015). 

Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters which can be observed and described by a lay person. 38 C.F.R. § 3.159(a) (2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau, 492 F.3d at 1377. 

In making all determinations, the Board must fully consider the lay assertions of record. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson, 581 F.3d at 1316; Jandreau, 492 F.3d at 1376-77. When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau, 492 F.3d at 1376-77.

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997). The Board, as fact finder, must determine the probative value or weight of the admissible evidence. Washington v. Nicholson, 19 Vet. App. 362, 369 (2005).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Heart Disorder

The Veteran contends that service connection is warranted for coronary artery disease. 

In addition to the rules above, service connection may be established on a presumptive basis for a disability resulting from exposure to an herbicide agent such as Agent Orange. A Veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. See 38 C.F.R. §§ 3.307(a) (6) (iii); see also VAOPGCPREC 7-93. 

The Secretary of Veterans Affairs has determined that there is a presumptive positive association between exposure to herbicides and the disorders listed in 38 C.F.R. § 3.309(e). Effective August 31, 2010, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), is included as a disease associated with herbicide exposure under 38 C.F.R. § 3.309(e). (Under 38 C.F.R. § 3.309(e), the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of Ischemic heart disease. 38 C.F.R. § 3.309(e) Note 3.)

Here, the Veteran's service records show that he served in the inland waterways of the Republic of Vietnam during the Vietnam era. See VBA Manual M21-1, III.i.3.A.2.a. As such, the Veteran is presumed to have been exposed to herbicides such as Agent Orange. 

The Veteran's post-service treatment records include diagnoses of coronary artery disease, status post myocardial infarction. The Board notes that 38 C.F.R. § 3.309(e), as amended, indicates that coronary artery disease, status post myocardial infarction, is a manifestation of ischemic heart disease for which service connection may be established on a presumptive basis based upon exposure to herbicides. As such, service connection is warranted on a presumptive basis due to the Veteran's presumed exposure to herbicides in the Republic of Vietnam. 38 C.F.R. §§ 3.307, 3.309(e). Therefore, service connection is warranted. 

Chronic Sinusitis and Visual Disability

Service treatment records show no indication of any sinusitis or visual problems. There were no complaints, findings or diagnoses showing any problems related to vision or sinusitis. These records contain examination findings from vision testing in September and October 1964 at entry to service, and at the September 1968 examination prior to discharge. Except for one set of test findings in September 1964 when vision in the right eye was recorded as 20/25, all results showed 20/20 vision in both eyes, with no defects noted otherwise. Further, at the September 1968 examination the evaluation was normal for sinuses, eyes, pupils, and ophthalmoscopic evaluation.

VA treatment records show that the Veteran was hospitalized in March 1975 for about three days for complaints of a skin rash. During that treatment the Veteran reported that in the past few months he had been troubled with headache and low grade fever, and that over previous weeks just prior to this admission his headaches had been much less troublesome. In this regard, the hospital report noted that X-rays of his sinuses in February 1975 showed bilateral maxillary sinusitis. The report contains diagnoses including of sinusitis, chronic.

The report of private physical examination in June 1989 shows that visual acuity without glasses was 20/25 bilaterally; with no abnormal eye examination findings otherwise on examination. 

The report of a September 1992 VA general examination shows that on examination of the eyes, pupils were round, equal, and responded to light and accommodation; evaluation of the nose, sinuses, mouth and throat was normal. There was no diagnosis referable to sinusitis or a vision disorder.

The report of a July 1995 VA general examination shows that the Veteran reported a history of a number of problems but none involved sinusitis or vision problems. On examination, findings included: nose, sinus, mouth and throat reveal poor dentition; and eyes have distant vision of 20/20. There was no diagnosis referable to sinusitis or a vision disorder.

During a June 1998 VA general examination the Veteran reported complaints of several conditions, none of which involved sinusitis or vision. On examination, pupils were equal and reactive to light and accommodation. Extraocular muscles were intact, visual acuity was normal, funduscopic examination was unremarkable, and ears, nose and throat were normal. There was no assessment referable to sinusitis or a vision disorder.

During a July 2002 VA general examination the Veteran reported no complaints referable to sinusitis or vision problems. On examination of the eyes and nose, no abnormalities were noted. There was no assessment referable to sinusitis or a vision disorder.

The evidence does not show a diagnosis of a vision disability or sinusitis during the appeal period. In the absence of proof of either such disability, there can be no valid claim for service connection for either of the claimed disabilities. Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer, 3 Vet. App. at 225. 
 
Although the Veteran is competent to attest as to symptoms he has observed, he is not competent to diagnose a vision disability or chronic sinusitis that is based on medical findings including diagnostic testing. Despite a diagnosis of sinusitis, chronic, recorded in February 1975 based on the Veteran's report of headaches over several months; the evidence does not show any chronicity of a sinusitis or subsequent clinical evidence of an episode of sinusitis since then. The evidence does not show a diagnosis of sinusitis during the appeal period. 

Regarding the claimed visual disability, no vision disability has been shown that warrants service connection. To the extent that the Veteran has refractive error, it is considered a congenital defect and is not a compensable disability for VA purposes. See 38 C.F.R. §§ 3.303(c), 4.9 (2015). Additional disability that results from an in-service disease or injury being superimposed onto refractive error may warrant service connection, but the Veteran has not alleged, and the record does not show that the Veteran had refractive error in service let alone that which was subject to superimposed disease or injury in service. See VAOPGCPREC 82-90 (July 18, 1990). 

As there is no current disability established by the evidence for a vision disability or chronic sinusitis, it is unnecessary to consider whether the claim meets criteria of any other elements of service connection regarding an in-service incurrence or aggravation of a disease or injury; or the nexus requirement. Shedden, 381 F.3d at 1167.

In the absence of competent evidence of current chronic sinusitis or vision disability, the preponderance of the evidence is against the claims of service connection for either; there is no doubt to be resolved; and service connection is not warranted for chronic sinusitis or a vision disability. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

ORDER

New and material evidence having been submitted, the Veteran's claim for service connection for a skin disability is reopened, and to that extent only, the appeal is granted.
 
New and material evidence having been submitted, the Veteran's claim for service connection for a chronic lung condition is reopened, and to that extent only, the appeal is granted.

Service connection for coronary artery disease, status post myocardial infarction, is granted. 

Service connection for chronic sinusitis is denied. 

Service connection for a vision disability is denied. 


REMAND

In light of the Board's decision to reopen the claims of service connection for a skin disability and for a chronic lung condition, and for purposes of further necessary development, a remand of the underlying service connection claims is necessary for further development and to accord the RO an opportunity to adjudicate the issues on a de novo basis in light of any recent evidence received since the April 2014 statement of the case. See Hickson v. Shinseki, 23 Vet. App. 394, 399 (2010). 

Also, the decision above granting service connection for coronary artery disease, status post myocardial infarction, necessitates a remand of the claims for service connection for a psychiatric disability and for a chronic lung condition. The Veteran's service-connected coronary artery disease, status post myocardial infarction may potentially have caused or permanently aggravated a present psychiatric disability or chronic lung condition of the Veteran. 

A remand is necessary to afford the Veteran appropriate VA examinations: to obtain an opinion as to whether any present psychiatric disability or chronic lung condition is related to service to include whether either is proximately caused or aggravated by the Veteran's service-connected coronary artery disease, status post myocardial infarction; and as to whether any present skin disorder is related to service.

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to identify all medical care providers who have evaluated or treated him for his coronary artery disease, status post myocardial infarction; psychiatric disorder; chronic lung condition; or skin condition. Request copies of any pertinent private or VA medical records not currently of record from all sources identified. Thereafter, schedule the Veteran for the following sets of VA examinations.

2. Schedule the Veteran for VA examinations for psychiatric and respiratory symptomatologies, respectively, by an appropriate psychiatric and respiratory examiner(s), to determine the nature, onset, and likely etiology of any psychiatric disorder or chronic lung condition. The claims file should be made available to each respective examiner, who should review the entire claims folder in conjunction with this examination. 
 
After review of the evidence on file, and examining the Veteran, the examiners should respectively identify any present psychiatric disorder or chronic lung condition. 

For any psychiatric disorder or chronic lung condition identified, the examiners should provide opinions addressing whether it is as likely as not (a probability of 50 percent or greater) that the etiology of any psychiatric disorder or chronic lung condition: (i) is related to or had its onset in service; or (ii) in the case of any psychosis, manifested within one year of discharge from service; or (iii) is proximately due to or the result of a service-connected disability to specifically include the Veteran's service-connected coronary artery disease, status post myocardial infarction.
 
In providing the above opinions, the examiner must comment on clinical record evidence during or since service, or since development of cardiac symptomatology. Each examiner should set forth a complete rationale for all findings and conclusions in their examination reports. 

3. Schedule the Veteran for a VA dermatological examination to determine the nature, onset, and likely etiology of any chronic skin condition. The claims file should be made available to the examiner, who should review the entire claims folder in conjunction with this examination. 

After review of the evidence on file, and examining the Veteran, the examiner should identify any present chronic or recurrent skin condition. For any such chronic or recurrent skin condition identified, the examiner should provide an opinion addressing whether it is as likely as not (a probability of 50 percent or greater) that the etiology of any chronic or recurrent skin condition: (i) is related to or had its onset in service; or (ii) is proximately due to or the result of a service-connected disability

4. Finally, readjudicate any claim remaining on appeal. If a benefit sought on appeal is not granted, issue the Veteran and his representative a supplemental statement of the case and provide the Veteran an opportunity to respond. Thereafter, if appropriate, the case is to be returned to the Board, following applicable appellate procedure.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs